The question as to the validity and infringement of plaintiff’s inventions was adjudged May 2, 1927, reported in 63 C. Cls. at p. 438. In fixing compensation for infringement the court made additional special findings of fact, as follows:
I. A summary of the bids under which the contract for vertical fluoroscopes, transformers, and universal units was awarded to the Wappler Company is as follows:

II. If the Waite & Bartlett Company had been awarded the contract entered into by the Government under date of June 28, 1921, with the Wappler Electric Co., the labor and material cost per unit would have been as follows:
Item Cost
Vertical fluoroscope_$178.89
Transformer_ 133. 00
Universal unit_ 400.16
and the gross profit per unit, omitting overhead, would have been—
Item Cost
Vertical fluoroscope-$132.11
Transformer_ 102.00
Universal unit_ 374. 04
The overhead of the Waite & Bartlett Company during the year of the contract was 40%. There is no evidence as to what proportion or percentage of overhead would have been *155 allocated to the above units had the Waite & Bartlett Company been awarded the contract, and no evidence of what .the net profit per unit would have been.
III. Between June 28, 1921, and June 15, 1922, the Wap-pler Company manufactured and delivered to the Government under the contract of June 28, 1921, or in connection ■therewith—
50 vertical fluoroscopes.
51 transformers.
50 Universal X-ray units with transformers.
The cost per unit, inclusive of material, labor, and alio-•cated overhead, was as follows:
Item Cost
Vertical fltioroscope_$249; 40
Transformer_ 58. 05
Universal X-ray unit_ 353.88
The profit made per unit by the Wappler Company was •as follows:
Item Profit
Vertical iluoroseoxje_$0.40 (loss)
’Transformer_38. 95
Universal X-ray unit_45.12
IY. The X-ray units furnished the Army by plaintiff in 1911 and 1918 were sold at a price of $400.00 per unit. The transformers used in these units were made for the Waite & Bartlett Company by a subcontractor; some at a cost to the Waite & Bartlett Company of $100.00 per transformer, and others at a cost of $71.00 per transformer.
The total labor and material cost per X-ray unit was $215.33 with the $100.00 transformers and $186.33 with the $71.00 transformers.
Y. With an overhead figure of 40 per cent of labor and material costs, the net profit made by Waite & Bartlett per unit was $98.54 in those employing the transformer costing $100.00, and $139.14 in those employing the transformer costing $71.00.
YI. The claim of the patent in suit specifies and points out, as plaintiff’s invention, a combination or system comprising three elements, to wit: An X-ray tube with a hot cathode, a transformer having a single primary winding and two secondary windings, one of which functions to gen *156 erate a heating current for the cathode, and three wires connecting the transformer to the tube. Such a combination of elements comprises an operative entirety, not dependent for functioning upon any specific type of tube stand, cabinet, or other accessory.
VII. The cost to Waite & Bartlett of these three elements forming the basis of monopoly of the patent in suit was as follows: Tube, $80.00; transformer, $100.00 or $71.00, and wire, $0.30. The tubes were sold to the Government at $107.00 each. Applying 10 per cent for overhead, the figure used by Waite & Bartlett in the sale of the goods manufactured by someone else, the net profit per tube was $19.00. The profit on the transformers was 50 per cent of the profit on the entire apparatus, which gives a net profit of $49.27 on those costing $100.00, and $69.57 on those costing $71.00, as calculated from the net profits of Finding V. This gives an average net profit of $59.42 per transformer.
VIII. A profit of approximately 100 per cent of the cost is indicated in the last two figures given in Finding VII. Using this figure as the basis for the profit on the wire connecting the transformer to the tube, the profits on the three elements of Finding VII are as follows: Tube, $19.00,, wire, $0.30, and transformers $49.27 or $68.57, giving a total net profit of $68.57 on the transformers costing $100.00 and' $88.87 on the transformers costing $71.00.
IX. The milliampere meters which formed a portion of the entire X-ray unit referred to in Finding IV were of stock or standard construction capable of utilization on other-electrical devices wherever it was desired to measure current of the same values as those used in the X-ray unit.
The entire value of the X-ray unit referred to in Finding IV is not predicated upon the Waite patent No. 1,343,599.
X. The fifty universal units sold to the Government by the Wappler Company at the price of $399.00 per unit included a transformer as specified in the specifications, defendant’s Exhibit 27.
XI. The reasonable and just compensation is $59.42 per transformer, which is the average net profit made by Waite & Bartlett on their previous sale to defendant in 1917 and 1918. This profit on transformers applied to the total of *157 51 transformers and the 50 universal X-ray units with transformers, referred to in Finding III, gives a total of $6,001.42.
The court decided that plaintiff was entitled to recover $6,001.42.
MEMORANDUM BY THE COURT
This case is now before the court for the determination of a just and reasonable compensation for the infringement of Waite patent #1,343,599 by the sale of certain X-ray apparatus to defendant under a contract with the Wappler Company as set out in Finding III.
The monopoly granted by the above-enumerated patent relates solely to a transformer for the production of suitable currents for the operation of a Coolidge X-ray tube, which in itself is a well-known commercial product. The devices sold to the Government by the Wappler Company comprised not only transformers but in addition fluoroscope units and a universal X-ray unit which included a transformer.
Plaintiff maintains that the entire value of those various structures sold is predicated upon the Waite patent #1,343,599, and accordingly asks for compensation based upon the entire profits of the fluoroscopes and X-ray units as well as the transformers. This we can not agree to. The units sold incorporate many elements which have value and utilization aside from any specific manner of furnishing or producing exciting currents for the X-ray tube. The vertical fluoroscope comprises as its most essential element an adjustable screen for making observations and the universal X-ray unit includes electrical measuring instruments of standard construction as well as a tube-holding stand. All of these elements are capable of performing their ordinary and customary function aside and apart from any given type of transformer, and the entire value of the apparatus can not be said to be dependent upon plaintiff’s transformer structure.
Moreover, plaintiff in his original petition in this case relied upon two other patents, to wit: Waite patent #1,371,011 for a tube holder, and Waite patent #1,420,395 for a vertical fluoroscope unit. By the very fact of including *158 these patents in his petition plaintiff negatives his contention that the entire value of these structures is dependent upon the one patent. The court in its opinion of May 2, 1927, stated, with reference to these other patents—
“ If patents No. 1371011 and No. 1420395 are relied upon as augmenting damages as for infringement, we think both have been anticipated by the prior art, and that as to No. 1371011 the defendant did not use it.”
To give plaintiff the entire profits upon all of the structures would be in effect to permit plaintiff to recover indirectly for something the court has refused him directly. We therefore hold that plaintiff is entitled to recover only for the transformers.
From Findings IV to YII it appears that in 1917 and 1918 the Waite & Bartlett Company sold X-ray structures to de-fendánt upon which an average net profit was made of $59.42 per transformer. This is a somewhat higher figure than the net profit of $38.95 per transformer which was made by the Wappler Company. The defendant, however, was an old customer of the plaintiff and .it is therefore properly deducible that the patentee, by reason of the infringement, lost the sale of the transformers sold by the Wappler Company. It is therefore proper to use such lost profits as a measure of just and reasonable compensation. Plaintiff fails to show any net profits on transformers other than those sold to the defendant in 1917 and 1918, and we are accordingly limited to the above figure of $59.42 per transformer.
Judgment for plaintiff in the sum of $6,001.42. It is so ordered.