**COOKE v. UNITED STATES.**

No. 45799.

United States Court of Claims.

Feb. 7, 1949.

H. Dorsey Spencer, of New York City, for plaintiff.

Bernard Wohlfert, of Washington, D. C., and H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and MADDEN, LITTLETON, WHITAKER and HOWELL, Judges.

MADDEN, Judge.

The plaintiff, a citizen of Great Britain, sues for the alleged infringement by the Government of his United States patent No. 1,473,337, granted November 6, 1923, on an application filed August 15, 1919. The patent is for a breathing compound to be supplied to deep-sea divers as a substitute for ordinary air. The problem at which the invention was aimed was that nitrogen, which makes up 80 percent of ordinary air, is highly soluble in the liquids and tissues of the body, and particularly in the fatty tissues. Air must be supplied to the diver under pressure somewhat greater than the water pressure at the depth at which he is working. When the nitrogen of the air

is supplied at such pressure, if the depth is great and the pressure correspondingly high, a large amount of the nitrogen is absorbed into the tissues of the diver's body. When the diver ascends toward the surface of the water, the absorbed nitrogen reappears in his blood vessels, and is ultimately discharged through his lungs. If the ascent is made too rapidly, bubbles of nitrogen are formed in the blood vessels, which impair the circulation of the blood and other functions of the body, and cause such maladies as "bends," paralysis, and, sometimes, death. To prevent these ill effects, a slow and interrupted ascent is made. For instance, a diver working at a depth of 180 feet for a half hour up to an hour should be allowed 111 minutes for the ascent to the surface.

The plaintiff's alleged invention for which he received his patent was for an artificial breathing mixture in which some other gas would be substituted for the nitrogen content of the air. The two claims of the patent are as follows:

"1. A respirable composition comprising oxygen gas, and a chemically inert rare gaseous diluent therefor the oxygen being in a proportional amount substantially proper for respiratory purposes.

"2. A respirable compound for divers' use comprising oxygen and helium as a gaseous diluent, the oxygen being in a proportional amount substantially proper for respiratory purposes."

The patent states as objects of the invention the obviation of harmful effects of the absorption of nitrogen, and the elimination of the dangers of the diver's emergence from pressure, thus increasing the time during which he can work under pressure, and reducing the time required for his ascent.

The patent further states that helium is selected as the best among a number of suitable diluents for the oxygen in the mixture, and that the compound would be one part oxygen to four parts helium. A second formula suggested is one part oxygen to four parts argon, and a third, one part oxygen to four parts hydrogen. However, it is cautioned that while hydrogen would not, like nitrogen, be absorbed by the tissues, it is highly explosive in combination with oxygen and its use would be dangerous.

The Government's infringing act relied upon in the present phase of this case was its use of a breathing mixture of 25 percent oxygen and 75 percent helium for some of its diving operations in connection with the submarine Squalus which sank May 23, 1939, in 240 feet of water in the vicinity of Portsmouth, New Hampshire, and was raised and finally docked on September 15, 1939.

The Government contends that both of the claims of the plaintiff's patent are invalid. It says that claim 1 is invalid because it is drawn to a class of compositions some members of which class are, to use the patent jargon, "not operative" for the purposes intended. We have concluded that the word "comprising" used in each of the claims meant "consisting of" and not merely "including." Claim 1, then, is for a respirable composition consisting of oxygen and a chemically inert rare gaseous diluent, the oxygen being in a proportional amount substantially proper for respiratory purposes. At the time in 1919 when this language was used, the rare inert gases were understood to include argon, xenon, krypton, helium and neon. The Government says that some of these gases, namely, argon, xenon, and krypton, are more readily absorbable by body tissues than nitrogen, and we have so found. The plaintiff, then, in his claim 1, sought a monopoly of the use of the entire class of rare inert gases for the purpose of making a breathing mixture for divers, when in fact the class did not have in common the desired characteristic, namely, nonabsorbability by the tissues of the body, three of the five members of the class not having that characteristic. Unless, then, the plaintiff's claim 1 is translated to read "Such of the rare inert gases as, upon experimentation, shall be found to have the quality of nonabsorbability by the tissues of the body" the claim covers materials that are "nonoperative," i. e., would not, in practice, do what the patent was intended to do. A claim is invalid as too broad when it covers, by a description of a class, materials which not only would not serve the purpose of the pat-

ent, but whose attempted use for that purpose would be dangerous.[2] We conclude, therefore, that claim 1 of the plaintiff's patent is invalid.

Claim 2 of the patent described helium as the element to be substituted for nitrogen, the oxygen to be in "a proportional amount substantially proper for respiratory purposes.", In the general statement of the patent it is said that the mixture should contain one part oxygen and four parts helium. The Government urges that the patent was anticipated by the prior art. We have, in our findings, shown the prior art, and the only point in it that deserves further discussion is the British patent to Schrotter, granted in 1908 and described in our Finding 14. It provided for substituting hydrogen, methane, or some other neutral gas for the nitrogen of the air, in a mixture to be supplied to the diver when he is about to ascend, and while he is ascending to the surface of the water, the proportion of oxygen in the mixture to be increased as the diver approaches the surface. The proportions of the mixture were not stated and were to be graduated, the oxygen content to be increased during ascent. The purpose of the Schrotter composition was not the prevention of the absorption of nitrogen into the tissues of the body while the diver was descending and working, but the elimination of the nitrogen without the former harmful effects, after it had been absorbed. The purpose was cure, rather than prevention. The purpose of the plaintiff's composition was prevention, by eliminating nitrogen from the breathing mixture at all times, during descent, work, and ascent. The Schrotter composition so far as its first named neutral gas, hydrogen, was concerned, was probably nonoperative, because of the explosive nature of an oxygen-hydrogen mixture, and for that reason an American patent based upon it would probably have been invalid. But as a disclosure, which would anticipate a later claimed invention, it might, we suppose, be effective, even if it was not a proper basis for a patent. Its teaching that a mixture containing no nitrogen might be used as a cure for the ill effects of the absorption of nitrogen might well have led, upon use and further experimentation, to the discovery that a mixture containing no nitrogen could be used while the diver was working, as well as while he was ascending. We think, however, that while the Schrotter patent might ultimately have led to the discovery of the plaintiff's composition, it did not point to it at all clearly, and did not anticipate the plaintiff's invention of his specified composition to be used for a specified purpose, neither his composition nor purpose being those stated by Schrotter. We conclude that the plaintiff's claim 2 is valid.

We think that the Government, in its salvage operations resulting in the raising and docking of the submarine Squalus, infringed the plaintiff's patent and therefore the plaintiff is entitled to recover. Evidence of the extent of the infringing use and the amount of compensation which the plaintiff should receive will be offered before a commissioner of the court, to whom the case will be referred for that purpose.

It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, Judges concur.

[2] For decisions holding patent claims invalid because they covered classes of materials, some members of which classes were nonoperative, see Corona Cord Tire Co. v. Dovan Chemical Corporation, 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610; Consolidated Electric Light Co. v. McKeesport Light Co. (the Incandescent Lamp case), 159 U.S. 465, 16 S.Ct. 75, 40 L.Ed. 221; Kalle & Co. et al. v. Multazo Co., Inc., et al., D.C., 31 F.Supp. 109, Id., 6 Cir., 109 F.2d 321; American Chemical Paint Co. v. Firestone Steel Products Co., D.C., 27 F.Supp. 144, Id., 6 Cir., 117 F.2d 927.