YOSEMITE CHEMICAL COMPANY
v.
The UNITED STATES.
No. 62–58.
United States Court of Claims.
May 13, 1966.

Keith Misegades, Washington, D. C., for plaintiff.

Martin Avin, with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

PER CURIAM:

This case was referred to Trial Commissioner Donald E. Lane who, on July 8, 1965, filed a report consisting of his opinion, findings of fact and recommendation for conclusion of law. Exceptions and briefs were filed by the parties and the case was submitted to the court on oral argument of counsel. Since the court is in agreement with the opinion and recommendation of the commissioner, with modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. The court concludes, therefore, that claim 7 of U.S. Letters Patent 2,603,226 is invalid, that claims 1–5, inclusive, of said patent are valid and have been infringed, that plaintiff is entitled to recover, and judgment is entered for plaintiff to that extent with the amount of recovery to be determined pursuant to Rule 47(c) (2).

Commissioner Lane's opinion, as modified by the court, is as follows:

This is a patent suit arising under the provisions of 28 U.S.C. § 1498 for the recovery of reasonable and entire compensation for unlicensed use of the alleged invention described and claimed in U.S. Letter Patent 2,603,226, issued July 15, 1952, upon the application filed November 7, 1947, by Noble C. Smith, now deceased. The patent was duly assigned to plaintiff, a California corporation, by the executor of the inventor's estate, so that plaintiff was the assignee and owner of the patent both at the date of its issuance and at the date of the filing of this suit. The parties agreed at pretrial that this court has jurisdiction over all the issues raised by the petition and answer, and that the issues of patent validity and infringement should be first determined, with any accounting issues to be deferred until resolution of the question of liability. Patent claims 1 through 5 and claim 7 are in issue here. It is concluded that claims 1 through 5 of the patent are valid and have been infringed by defendant's procurement and use of the Eureka Chemical Company's compositions E–220 and E–221. Claim 7 of the patent is found to be invalid.

The patent in suit, hereinafter referred to as the Smith patent, discloses a method for preventing and removing the accumulation of various materials such as rust, scale, marine growth and the like from metal surfaces such as the compartments of marine dry docks by the use of emulsifying agents. Claims 1 through 5 of the patent relate to a two-stage process for the removal of foreign materials from the said surfaces, while claim 7 defines a single-step process which merely prevents such substances from accumulating upon clean or cleaned surfaces.

The two steps comprising the removal process defined by claims 1 through 5 include: *first,* use of an emulsifying agent in oil capable of forming with water a water-in-oil viscous gel emulsion, which upon contact with a rusted or corroded surface will by its inherent swelling characteristics mechanically break the foreign materials from the surface; and *second,* use of an oil soluble thinner capable of reducing the viscosity of the gel emulsion formed in the first step, so that

the said emulsion and the materials which adhere to it may be loosened from the surface and removed. The purely preventative process detailed in claim 7 differs from the removal process recited in claims 1 through 5 in that the separate step of applying an oil soluble thinner to reduce the viscosity of the gel is eliminated.

One of the primary applications of the two-step process of claims 1 through 5 of the Smith patent, and the one relevant to the present infringement suit, involves its use in cleaning the inner walls of the ballast tanks of ships or marine dry docks. In this process the emulsifying agent in oil is floated upon the surface of a body of water inside of a tank. As the level of the water is caused to rise and fall, the emulsifying agent is progressively deposited upon all the inner surfaces of the tank, where it begins to emulsify and to penetrate behind the foreign materials and break them loose from the surface. In a few days, after the gel emulsion has completely formed and has successfully broken away the foreign materials, the oil soluble thinner is applied in order to reduce the thickness of the gel formed so that gravity flow and subsequent submersions may carry away the materials which have been broken from the surface and which adhere to the gel.

In the original claims which accompanied his application for the patent, the patentee described the agent to be used in the first step of the process merely as an "emulsifying agent in oil capable of forming a water-in-oil emulsion." The Patent Office examiner rejected the original claims presented on the grounds that they: (1) were anticipated by prior art, and (2) were not sufficiently definitive as to the ingredients of the emulsifying and thinning agents to be employed. In response to this rejection, and several subsequent rejections, the inventor canceled, amended, and added claims in order to cure the defects noted by the examiner. Eventually, seven claims were approved, all of which included a specific recital that the agent to be used in promoting the viscous gel emulsion be comprised of a "fatty acid soap [or organic soap] of a divalent metal."

Defendant urges, first of all, that the Smith patent is invalid on the grounds that the invention had been fully anticipated by the prior art (35 U.S.C. §§ 101, 102), and that the invention would have been obvious to those skilled in the art at the time it was devised (35 U.S.C. § 103). In support of this contention, defendant has introduced several earlier patents to establish the fact of anticipation and to show the general state of the art.* Most significant is the Wakefield patent British Patent 469,889, August 4, 1937), which discloses a lubricant for preventing corrosion of metal working parts, particularly the parts of rock-drills used in mines where acidic water is encountered. This patent teaches that corrosion may be prevented by the use of a lubricating oil containing a fatty oil or wool-wax (a cruder form of lanolin) and one or more of the soaps of calcium or barium (*inter alia*), in such proportions that the lubricant is capable of absorbing the water to form a water-in-oil emulsion. The compound recommended by Wakefield to prevent corrosion is chemically similar to

---

*In support of its contention, defendant relies on four patents to establish the fact of anticipation, identified as follows:

| | | | |
|---|---|---|---|
| 1. | Allen | 63,453 | 1867 |
| 2. | Wakefield (British) | 469,889 | 1937 |
| 3. | DeGroote | 2,086,215 | 1937 |
| 4. | Wandel | 1,565,536 | 1925 |

Defendant also cites four patents to show the general state of the art, identified as follows:

| | | | |
|---|---|---|---|
| 1. | Taylor | 1,850,700 | 1932 |
| 2. | Ruedrich | 2,309,102 | 1946 |
| 3. | Roden | 2,374,565 | 1945 |
| 4. | Johnston | 2,415,353 | 1947 |

that contained in the Smith patent, and the teaching of Wakefield anticipates claim 7 of the Smith patent, which likewise defines a process for the *prevention* of rust. The Wakefield patent, however, does not anticipate claims 1 through 5 of the Smith patent, for it would not have been obvious for a person of ordinary skill in the art of *removing* marine corrosion to look to and modify the Wakefield teaching, which relates primarily to lubrication and to corrosion prevention.

The references submitted by defendant show that it would have been obvious for a person seeking a method of applying a chemical compound to the inner surfaces of a marine tank to employ the "flotation" method described by Smith in claim 5 and in the specification of his patent. This method for coating the interior surfaces of closed containers by floating a chemical upon a body of water was well known in the field of paint or chemical application prior to the time the patentee filed his application. None of the references, however, discloses the use of such a chemical composition as that recommended by Smith to remove the corrosion from said surfaces.

■ The patents cited by defendant do not individually anticipate the invention defined in claims 1 through 5 of the Smith patent; and it would not have been obvious to combine and modify the teachings of these patents, drawn from diverse arts, into the one process defined and claimed by Smith. In summary, it is found that claim 7 of the patent in suit is invalid in view of the prior disclosure of the Wakefield patent, and that claims 1 through 5 are valid over the prior disclosures submitted.

Defendant asserts that even if the patent claims are distinguishable from the prior art, they are invalid due to indefiniteness and ambiguity under 35 U.S.C. § 112. It is contended that the patent specification discloses only one example of an emulsifying agent in oil that would work to produce a viscous gel emulsion, namely "calcium lanolate," a term not found in the ordinary chemical dictionary. According to defendant, this term is imprecise and would not be understandable by one of ordinary skill in the field of chemistry who wished to employ the teaching of the patent.

■ It is the patent claims which measure the invention. See Chesterfield v. United States, 159 F.Supp. 371, 374, 141 Ct.Cl. 838, 844 (1958); Milcor Steel Co. v. George A. Fuller Co., 316 U.S. 143, 62 S.Ct. 969, 86 L.Ed. 1332 (1942). The Smith patent claims specify that the active ingredient to be used in the first step of the removal process is "an emulsifying agent in oil, said agent comprising a fatty acid soap [or organic soap] of a divalent metal." This terminology is in itself a definitive disclosure that would enable a person skilled in the art to practice the invention. "Calcium lanolate" is suggested in the specification as one example of such a fatty acid soap. This term should be understandable to the ordinary chemist; but in any case, the patent claims and specification do not limit themselves to this particular example and are sufficiently definitive and unambiguous to be valid.

Defendant urges also that the patent claims are inoperative due to overclaiming, in that they are so broad and generic in nature as to encompass a variety of chemical compounds that would not serve the function of the invention. The assertion is made that substantial experimentation would have to be undertaken by one wishing to follow the teaching of the Smith patent in order to determine which specific divalent metal soaps would be effective in producing the viscous gel emulsion required in the removal step of the patented process. See Chesterfield v. United States, supra; Cooke v. United States, 81 F.Supp. 1018, 113 Ct.Cl. 65 (1949); Corona Cord Tire Co. v. Dovan Chem. Corp., 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610 (1928).

■ It appears that not all substances technically falling within the general category of "fatty acid or organic soaps of a divalent metal" will work to promote sufficiently viscous water-in-oil emulsions. But the fact that there may be, and indeed are, certain divalent metal

soaps that do not work in the invention, however, will not invalidate the patent claims *per se*. Union Oil Co. of Calif. v. American Bitumuls Co., 109 F.2d 140 (9th Cir. 1940); Binks Mfg. Co. v. Ransburg Electro-Coating Corp., 281 F.2d 252 (7th Cir. 1960). Broad statements of the law to the effect that a patent must describe the invention with a great degree of precision must be read in light of the circumstances of each individual case. Georgia-Pacific Corp. v. U. S. Plywood Corp., 258 F.2d 124 (2d Cir. 1958), cert. denied 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112 (1958). The relevant patent statutes require that the claims be adequately described to indicate their true content and scope, but the disclosure called for need not be greater than that which is reasonable under the circumstances, having due regard to the nature of the subject matter involved. In re Hudson, 205 F.2d 174, 40 CCPA (Patents) 1036 (1953). The inventor is not to be deprived of the fruits of his labor by too technical a requirement of disclosure, and it is adequate for purposes of validity if his claims are sufficiently clear and exact to be understandable by those skilled in the relevant art. Lever Bros. Co. v. Procter & Gamble Mfg. Co., 139 F.2d 633 (4th Cir. 1943); Hazeltine Research, Inc. v. Dage Elec. Co., Inc., 271 F.2d 218 (7th Cir. 1959); Research Prod. Co. v. Tretolite Co., 106 F.2d 530 (9th Cir. 1939). In the present suit the evidence as a whole fails to corroborate defendant's assertion, based upon the *Chesterfield* case, supra, that substantial experimentation would have to be undertaken to determine which compounds falling within the literal range of the claims would be effective for use in the removal process. The *Chesterfield* case is distinguishable from the case at bar. In that case, the patent claims, relating to the use of certain alloys of nickel and cobalt, were quite indefinite, considering the crowded state of the art—covering broad ranges of compositions, many of which were taught by earlier patents. In the present suit, to the contrary, the claims are relatively narrow, and the ordinary chemist skilled in the art would know or could ascertain beforehand which organic soaps of a divalent metal form satisfactory viscous emulsions without having to conduct independent experimentation.[1] Moreover, the patent specification assists those who would practice the invention by identifying certain chemical compositions that do in fact work. See Union Oil Co. of Calif. v. American Bitumuls Co., supra. Thus, although it can be said that the general term "fatty acid or organic soap of a divalent metal" may technically encompass certain inoperative species, the claims, by themselves, or as read in light of the specification, may be readily comprehended by those skilled in the art, do not cover inoperative species, and would pose no particular problems in application. See Locklin v. Switzer Bros., Inc., 299 F.2d 160 (9th Cir. 1961), cert. denied, 369 U.S. 861, 82 S.Ct. 950, 8 L.Ed.2d 18 (1962). Hence, the patent claims are sufficiently clear and descriptive to serve the purposes of the invention, and are not so broad as to be invalid. Lever Bros. Co. v. Procter & Gamble Mfg. Co., supra; Hazeltine Research, Inc. v. Dage Elec. Co., Inc., supra; Application of Storrs, 245 F.2d 474, 44 CCPA (Patents) 981 (1957).

The infringing acts alleged by plaintiff involve the procurement and use by the Navy of certain chemical compounds supplied by two manufacturers, the Eureka Chemical Company and the Clearkin Chemical Company, during the 6-year period from September 8, 1952, to Sep-

---

1. In arguing that the patent claims are inoperative, the government relies on certain experiments conducted for it by the Navy, using calcium stearate, a nonpreferred fatty acid soap of a divalent metal which will not form a sufficiently viscous emulsion. The official who supervised these experiments, however, testified that he knew beforehand that this particular soap would not work well. Plaintiff contends that the ordinary chemist would think of using only the effective, fatty acids in following the patent claims and specification, thus excluding such inoperative species as calcium stearate.

tember 8, 1958. On March 23, 1954, the Navy issued a procurement specification to cover a chemical composition capable of removing and preventing rust in the ballast tanks of various ships. The specification outlined the method to be followed in the application of the chemicals to the tanks, and in this respect it parallels very closely the flotation method recited in claims of the Smith patent. The dispute as to patent infringement here essentially concerns the question of whether defendant's use of certain chemicals in this method stated is covered by claims 1 through 5 of the patent in suit.

In the proceedings before the Patent Office, the patentee inserted into his claims a recital that the emulsifying agent to be used in the first step of his process be comprised of a "fatty acid [or organic] soap of a divalent metal." The original claims accompanying the patent application were substantially broader in scope, in that they merely disclosed use of "an emulsifying agent in oil," without specifying what the ingredients of such a substance might be. The Patent Office examiner rejected all of the original claims and several supplemental claims for lack of invention and for indefiniteness, and in response the patentee narrowed his claims by introducing the limiting element of a divalent metal soap. All of the claims eventually approved by the Patent Office include this limitation.

It is a rule of patent construction that the claims of a patent must be read and interpreted with reference to claims that have been canceled and rejected. Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736 (1942); Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220–221, 61 S.Ct. 235, 85 L.Ed. 132 (1940); Martin v. United States, 86 Ct.Cl. 311, 378–379 (1938). Where an applicant has been compelled by the rejection of his application for patent to narrow his claims by the introduction of an essential element of limitation, he is thereafter bound by the limitation thus inserted, and his patent claims cannot be accorded such a scope of interpretation as would in effect reinstate the original claims. Straussler v. United States, 290 F.2d 827, 154 Ct.Cl. 275, 280–281 (1961); Smith v. Magic City Kennel Club, Inc., 282 U.S. 784, 51 S.Ct. 291, 75 L.Ed. 707 (1931). Plaintiff's contention that the use of *any* emulsifying agent in oil in the method steps outlined in the Smith patent would constitute infringement cannot be sustained in light of the pertinent file wrapper history, as the patentee here specifically narrowed each of his original claims to recite emulsifying agents comprised of a fatty acid or organic soap of a divalent metal. This recital was inserted in order to obtain issuance of the patent in the first place, and plaintiff therefore can claim patent protection only as to the use of such emulsifying agents as contain this particular material. See Haliczer v. United States, Ct.Cl. No. 13–61, 356 F.2d 541, decided February 18, 1966; Lavelle Aircraft Corp. v. United States, Ct.Cl. No. 146–60, 358 F.2d 1005, decided April 15, 1966.

During the 6-year period covered by this suit, the Eureka Chemical Company, pursuant to the above-mentioned procurement specification, furnished the Navy with two compounds, designated E–220 and E–221, for use in the treating of metal surfaces by the two-step process indicated by the Smith patent. E–220, used in the first step, contained an emulsifying agent in oil comprised of lanolin or wool fat and a fatty acid soap of calcium—a divalent metal. This composition satisfied the Navy's testing requirements, forming a rigid gel emulsion and successfully penetrating and loosening corrosion. E–221, a compound comprised mostly of diesel oil, was used in the second step of the process, to reduce the gel viscosity. Defendant's use of the E–220 and E–221 compounds in the method stated in the Navy specification is covered by claims 1 through 5 of the Smith patent in suit.

During the 6-year period in question, the Clearkin Chemical Company furnished the Navy with certain compositions pursuant to said specification. The Clearkin composition designated "Cor-

rosion Battler A" contained lanolin or wool fat, but only trace amounts of a divalent metal. The president of the company stated by affidavit that no divalent metal was intentionally added to this compound by the company. Although laboratory analysis of the ash content of "Corrosion Battler A" did in fact reveal certain traces of various metals, both monovalent and divalent, the amounts found were insignificant and could likely be attributable to sources other than the soap of the compound. The Clearkin composition "Corrosion Battler A" does not in effect contain any "soap of a divalent metal," and this compound therefore cannot be said to infringe the Smith patent claims, all of which are specifically directed to emulsifying agents comprised of a fatty acid or organic soap of a divalent metal.

Plaintiff also alleges infringement of its patent by a compound known as Texaco Float Coat, supplied to the Navy by the Texas Company, although it does not rely on this fact for a showing of specific liability in the case. No proof has been submitted as to the composition of Texaco Float Coat.

In summary, it is concluded that claim 7 of the Smith patent in suit, relating to a single-step process for the prevention of rust, etc., is invalid in view of the disclosure of the prior Wakefield British patent. Claims 1 through 5 of the Smith patent are found to have been infringed by defendant's use of the Eureka Chemical Company's compounds E–220 and E–221 in the flotation method for removing rust. Defendant's use of the Clearkin Chemical Company's composition "Corrosion Battler A" [and Texaco Float Coat] is found not to come within the invention defined in claims 1 through 5 of the Smith patent.

It is recommended that a judgment be entered for the plaintiff on the issue of liability, and that the case be remanded to the commissioner for further proceedings under Rule 47(c) (2) to determine the amount of recovery.