**AMERACE ESNA CORPORATION**

v.

**The UNITED STATES.**

No. 62–58.

United States Court of Claims.

July 14, 1972.

Keith Misegades, Arlington, Va., attorney of record, for plaintiff.

Martin Avin, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, LARAMORE, Senior Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, and KUNZIG, Judges.

### OPINION

PER CURIAM:

This case was referred to Trial Commissioner Joseph V. Colaianni with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on January 5, 1972. Both parties filed exceptions to the commissioner's opinion, findings of fact and recommended conclusion of law and the case has been

submitted to the court on the briefs of the parties and oral argument of counsel. Since the court agrees with the commissioner's opinion, findings of fact and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, plaintiff is entitled to recover reasonable and entire compensation in the sum of $41,000, plus interest (on $25,000) at the rate of 4 percent from March 1, 1971, to the date of payment and judgment is entered for plaintiff accordingly.

## OPINION OF COMMISSIONER

COLAIANNI, Commissioner:

In Yosemite Chemical Co. v. United States, 360 F.2d 948, 175 Ct.Cl. 623 (1966),[1] this court held claims 1–5 of Smith U.S. Patent 2,603,226 to be valid and infringed. Trial was held to determine, pursuant to 28 U.S.C. § 1498, plaintiff's "reasonable and entire compensation." On the basis of the evidence presented at trial, fully set forth hereinafter in the findings of fact, and for reasons which I follow, I conclude that plaintiff is entitled to recover: $25,000, as damages for the Government's unauthorized use of the patented invention; $16,000, as delay damages, measured as interest (at 4 percent per annum) from the time of the unauthorized use up to March 8, 1971; and additional interest (at 4 percent per annum) from March 8, 1971 to the date of payment.

### Background facts

The patent in suit, hereinafter referred to as the Smith patent, relates to a process for preserving and/or removing accumulations of rust, scale, marine growth and the like from ballast tanks of marine dry docks and ships. (Findings 5, 6, 7 and 8.)

Claims 1 through 5 (claims 1 and 5 are set out in Finding 4) of the patent

define a two-stage process for the removal of foreign materials from metal surfaces. The first stage requires the use of an emulsifying agent in oil (Part A of the two-part flotation compounds) capable of forming with water a water-in-oil viscous gel emulsion. The gel, by its inherent swelling characteristics, mechanically breaks the bond between the rust, scale, etc., with which it comes in contact and the metal surface. The second stage calls for the use of an oil soluble thinner (Part B of the two-part flotation compounds) to reduce the viscosity of the gel emulsion and thus permit it and the rust, corrosion, etc., adhering to it to be loosened and removed from the metal surface.

### Relevant accounting period

The parties originally stipulated that the recovery period was to be limited to the six-year period of September 8, 1952, to September 8, 1958. However, for convenience, plaintiff concedes that procurement of the two-part compounds by defendant substantially ceased by September 8, 1957. Accordingly, for purposes of this suit, the recovery period is limited to the five-year period September 8, 1952, to September 8, 1957. (Findings 3 and 19.)

### Government's infringing use

Plaintiff filed its petition on February 14, 1958, charging defendant with infringement. However, this court, similar to the practice of other federal courts in patent cases, only allows formal discovery of relevant procurement data after a patent has been found to be valid and infringed. Accordingly, it was not until after May 13, 1966,[2] that plaintiff could formally obtain discovery concerning procurement by the Government of two-part flotation compounds. In 1966, plaintiff was faced with trying to obtain procurement records that were 9 to 14 years old.

---

1. Yosemite Chemical Company, through a series of mergers, is now part of plaintiff corporation.

2. The date of the court's decision on validity and infringement.

It is, of course, well known that the United States Government does not have unlimited space for the storage and preservation of records. Procurement records of the type with which we are here concerned, unless they were clearly marked for retention, would have been destroyed under the defendant's systematic document destruction program long before they became 9 years old. In this case, only plaintiff's earlier attempt to settle its claim of patent infringement by an administrative claim prevented all of the pertinent procurement records from being destroyed.

From the start of the accounting proceeding, plaintiff was dissatisfied with the procurement records supplied by defendant. An attempt was made in 1969 to obtain the relevant and necessary procurement data from defendant's supplier. Unfortunately, after a search of its corporate files, Eureka Chemical Company reported that its records for the pertinent years had been destroyed.[3]

Defendant is willing to calculate the number of gallons of Eureka two-part compounds which it used in carrying out plaintiff's patented process by supplementing the number of gallons that its records in evidence clearly establish with estimates from plaintiff in the following instances:

(a) Where defendant's records fail altogether to show a use of Eureka two-part compounds and plaintiff's records not only allege such a use, but indicate the number of gallons allegedly used; and

(b) Where plaintiff's estimates of the number of gallons used for a particular dry dock or ship are higher than defendant's records indicate.

As a result of this compromise, defendant admits to the procurement of 167,850 gallons of Eureka two-part flotation compounds during the relevant accounting years. (Finding 29.)

However, defendant's procurement records, which form the basis for its estimate, are obviously incomplete. For example, the procurement records of a significant number of the vessels and dry docks which defendant admits were authorized to use two-part compounds are not in evidence. (Findings 23–31.) An even poorer showing results when the procurement records of the accounted-for ships and dry docks are compared to the number of ships and dry docks that were capable of using such compounds. (See Findings 21–31.) In addition, possibly because the ships and dry docks which used two-part flotation compounds failed to report all such usage, and/or possibly because of the failure of defendant to uncover and/or preserve all reported usage, it is highly questionable if the records in evidence of the accounted-for ships and docks are complete and reliable. (See Findings 24–25.)

In sum, since the procurement records in evidence fall somewhat short of accurately reflecting the number of gallons of Eureka two-part compounds used on the accounted-for ships and dry docks, and since procurement records for a significant number of the ships and dry docks that were actually authorized to use two-part compounds have not been furnished, I conclude that defendant actually procured and used about 400,000 gallons of Eureka two-part flotation compounds during the relevant accounting years. (Finding 31.)

*Reasonable and entire compensation*

■ Plaintiff urges that compensation should be calculated on the basis of the cost savings to the Government. While, as defendant points out, this court has not used cost savings as a basis for calculating compensation for some years,[4] it is apparent that this is

3. While Clearkin Chemical Company did supply defendant with its records, for reasons stated in Findings 1, 2 and 28, they are not used in this accounting.

4. The last case in which cost savings were used by this court as the basis for calculating "reasonable and entire compensation" was Shearer v. United

only because a proper case where such a basis could be used has not occurred. Plaintiff's argument that this is a case in which to use cost savings as a basis to calculate its recovery is not convincing. Indeed, plaintiff has failed to present persuasive facts which would permit a determination of the cost savings inuring to the defendant's benefit as a result of its use of plaintiff's patented process. Plaintiff's attempt to arrive at the savings to defendant by comparing what it would have cost the Government to treat the ballast tanks of its ships and dry docks with a bituminous emulsion, to what it would have cost the Government to treat the same tanks by use of plaintiff's patented process, is unconvincing. (Findings 36–41.) Plaintiff's comparison unrealistically shows a large saving by defendant.

Plaintiff's argument would have been far more convincing if it had attempted a comparison in costs between plaintiff's process and representative, competitive, noninfringing flotation-type processes available at the time of the infringing acts. (See Findings 9–20.) There is no doubt that noninfringing two-part flotation compounds were available during the entire relevant accounting period. Indeed, this court found that defendant did not infringe plaintiff's patent through the use of Clearkin Chemical Company's two-part compounds in carrying out the process of claims 1–5. Also, defendant would not have infringed plaintiff's patent by the use of one-part flotation compounds in carrying out the processes disclosed by claims 1–5 and 7. Certainly, the evidence establishes that defendant ultimately turned to a process which utilized one-part compounds in preference to plaintiff's process as set forth in claims 1–5 and which required two-part compounds. (Finding 18.)

Finally, since the cost of the available noninfringing flotation compounds was competitive with Eureka two-part compounds, the cost savings to the Government as a result of its use of Eureka compounds in performing the process called for by claims 1–5 of the Smith patent would have been significantly, if not totally, eliminated.

■ Because of the difficulty in determining what "reasonable and entire compensation" should be in a given case, this court has always looked to see if a plaintiff through commercial dealings and licensing has established a royalty rate for its patented invention. In those instances where a patentee has an established commercial royalty rate, that rate will at least be the starting point for determining what a reasonable royalty rate for the Government shall be. In this particular case, the evidence shows that plaintiff did not enter into any industrial licensing agreements. (Finding 33.)

In the absence of an existing royalty rate, courts often resort to a "willing seller—willing buyer" approach to establish what a reasonable royalty should be under the particular facts with which they are faced.[5] In effect, this requires the synthesization of a hypothetical negotiation at the time of defendant's infringement, see Ushakoff v. United States, 375 F.2d 822, 179 Ct.Cl. 780, 785 (1967).

In the end, what is being attempted is to establish what the parties would have agreed upon, if both were reasonably trying to reach an agreement. Factors which are pertinent to such a determination include the nature of the invention, its utility and advantages, and the cost savings expected by the use of the invention.[6] In sum, this approach attempts to consider all reasonable factors

States, 101 Ct.Cl. 196, 60 USPQ 414, cert. denied, 323 U.S. 676, 65 S.Ct. 187, 89 L.Ed. 549 (1944).

5. Badowski v. United States, 278 F.2d 934, 150 Ct.Cl. 482, 485 (1960).

6. Standard Brands v. Federal Yeast Corp., 38 F.2d 314 (4th Cir., 1930).

that each side would urge to advance its own best interests in an arm's-length negotiation. However, quite significantly, this hypothetical approach has the advantage of considering facts which in an actual negotiation would not have as yet occurred and would thus be, at best, speculative. In the words of Justice Cardozo; [7]

> This is not a case where the recovery can be measured by the current prices of a market.
>
> \*    \*    \*    \*    \*    \*
>
> But the absence of market value does not mean that the offender shall go quit of liability altogether. The law will make the best appraisal that it can \*   \*   \* command.
>
> \*    \*    \*    \*    \*    \*
>
> At times the only evidence available may be that supplied by testimony of experts as to the state of the art, the character of the improvement, and the probable increase of efficiency or saving of expense.
>
> \*    \*    \*    \*    \*    \*
>
> This will generally be the case if the trial follows quickly after the issue of the patent. But a different situation is presented if years have gone by before the evidence is offered. Experience is then available to correct uncertain prophecy. Here is a book of wisdom that courts may not neglect. We find no rule of law that sets a clasp upon its pages, and forbids us to look within.

It thus becomes necessary in this case to try to balance on the one hand such factors as the duration and extent of use by defendant of plaintiff's patented process, and the availability, during the time of defendant's taking, of noninfringing one-part and two-part compounds which defendant could have used to preserve its ballast tanks; against, on the other hand, factors which include defendant's undeniable use of plaintiff's patented process and Eureka two-part compounds during the relevant accounting years and any advantages in utility and cost savings which inured to defendant from the use of plaintiff's invention.

Taking all such factors into consideration, it is felt that had the parties entered into negotiations for a license to use plaintiff's invention on the basis of about 400,000 gallons of two-part compounds, at a cost of $1.25 per gallon, or a total cost of $500,000, they may well have agreed upon a royalty at the approximate rate of 5 percent of the total dollar procurement. On this basis, plaintiff's compensation should be $25,000. (Finding 43(a).)

■ Plaintiff is also entitled to delay damages as part of its reasonable and entire compensation. Plaintiff urges that the interest rate used in calculating its delay damages should be 6 percent per annum. However, plaintiff offered no evidence and submitted no proof to establish a rate greater than the 4 percent rate which has been allowed by this court for many years. In the absence of such a showing, plaintiff's delay damages are to be calculated at the rate of 4 percent per annum of the reasonable compensation, see Confederated Salish & Kootenai Tribes v. United States, 437 F.2d 458, 460, 193 Ct.Cl. 801, 805 (1971).

Accordingly, plaintiff is entitled to delay damages, measured as interest at 4 percent per annum, from midway in the accounting period (March 8, 1955) to the date of payment. (Finding 43(b).)

7. Sinclair Refining Co. v. Jenkins Co., 289 U.S. 689, 697–698, 53 S.Ct. 736, 739, 77 L.Ed. 1449 (1933).