Opinion

per curiam:

This case involves a claim that the United States has infringed certain patents that were owned by the plaintiff.
The case, which involves both the issue of validity and the question of infringement, was referred under Eules 45 and 46 to Donald E. Lane, a trial commissioner of the court. The commissioner was directed to make findings of fact and to recommend legal conclusions in the light of the findings of fact, applicable statutes, and legal principles involved.
Pursuant to such reference, the commissioner has submitted his findings of fact and conclusion of law.
The court, after having considered the evidence, the briefs, and arguments of counsel, adopts the findings and opinion of *840 Commissioner Lane, which are printed below, and pursuant thereto plaintiff’s petition will be dismissed.
It is so ordered.
OPINION OP COMMISSIONER
This is a suit for patent infringement. Plaintiff contends that claim 5 of United States patent 1,698,934, and claim 4 of United States patent 1,698,935 have been infringed by certain heat-resistant alloys procured by the defendant.
Two issues are before the court, first, the validity of the two claims in suit, and, second, whether the defendant has infringed said patent claims. It is recognized that, of those two issues, validity has the greater public importance. Sinclair & Carroll Co., Inc. v. Interchemical Corp. 325 U. S. 327, 65 USPQ 297. Where the court finds as a fact that the patent claims in suit are clearly invalid for want of invention, it may not be necessary to consider the issue of infringement. The Dow Chemical Company v. Halliburton Oil Well Cementing Company, 324 U. S. 320, 64 USPQ 412.
The patents in suit relate to metal alloys containing cobalt and nickel with other metals and nonmetals. The patent specifications state that the alloys disclosed are designed for use in the production of high-speed cutting tools. The alloys contain cobalt, nickel, and carbon plus a metal or metals capable of forming hard carbides. Patent 1,698,934, hereinafter called the ’934 patent, has the broader claims, and patent 1,698,935, hereinafter called the ’935 patent, has claims specific to the use of chromium and molybdenum as metals forming hard carbides.
Claim 5 of the ’934 patent reads:
An alloy comprising 10 to 45% cobalt, 7 to 30% nickel, and 0.5 to 3.5% carbon, the remainder of the alloy consisting chiefly of metal capable of forming hard carbide.
Claim 4 of the ’935 patent reads:
An alloy comprising 15 to 50% cobalt, 7 to 30% nickel, 20 to 45% chromium, and 7 to 35% molybdenum, with a small amount of carbon.
The patent claims recite alloy compositions in terms of ranges expressed in maximum and minimum percentages by *841 weight for each of several elements. The ranges claimed are relatively broad, such as 7-30 per cent nickel. The specifications disclose several specific alloys with compositions that are within the limits claimed. The specification of the ’935 patent is similar to that of the ’934 patent, but emphasizes the use of molybdenum as a metal capable of forming a hard carbide.
The patents state that alloys for high-speed cutting tools must have the property of red hardness so that a tool made therefrom may maintain its cutting edge after the same has become red-hot. It is stated that such alloys must also have abrasive hardness and should contain hard crystals, usually metallic carbides, embedded in a metallic matrix. It is stated that the principal object of the Chesterfield invention is to improve the matrix of carbide-containing alloys to increase their strength and heat resistance and also to reduce their liability to flake, crack or splinter during use. The specifications state:
I have found that an alloy formed of hard carbides and a matrix composed of both cobalt and nickel as its basal components gives a much superior cutting tool to one made with either cobalt or nickel alone. [Emphasis added.]
The Chesterfield patents, applications filed in 1924, are not pioneers in the field of metal alloys containing cobalt and nickel. Fahrenwald patent 1,346,188, issued in 1920, discloses alloys for firearms and ordnance. Example (f) in the Fahrenwald patent teaches an alloy of any two iron group metals, plus tungsten or molybdenum, and small amounts of carbon, silicon, and manganese. The iron group metals include cobalt, nickel, and iron. The Fahrenwald teaching of any two iron group metals obviously includes cobalt and nickel, or cobalt and iron, or nickel and iron. Example (f) in the Fahrenwald patent teaches an alloy of iron or nickel, plus cobalt, chromium or tungsten, and carbon. It is clear that Fahrenwald taught the alloy art that two iron group metals, such as cobalt and nickel used together, provided an alloy better resistant to the high temperatures and strains of ordnance devices than an alloy containing cobalt or nickel alone as the basal component. The Fahrenwald alloys’ inclu *842 sion of chromium group metals, such as chromium, tungsten, and molybdenum, and the inclusion of small amounts of carbon, provided an alloy having hard carbides embedded in a matrix of cobalt and nickel. The ranges disclosed in this Fahrenwald patent include specific alloys within the broad ranges recited in the two Chesterfield claims in suit. The claims in suit are invalid because they are so broad as to cover alloys disclosed and taught by a prior patent.
A second Fahrenwald patent, 1,357,550, issued in 1919, also discloses an alloy of one or more iron group metals, plus chromium and molybdenum or tungsten, and plus carbon. This alloy is said to be chemically resistant and sufficiently strong to resist accidental breakage. The ranges specified in Fahrenwald 1,357,550 include alloys coming within the ranges recited in both claim 5 of the ’934 patent and claim 4 of the ’935 patent.
..Haynes patent 1,150,113', issued in 1915, discloses alloys of cobalt, nickel (replacing iron), chromium, other chromium group metals, and carbon. The alloys are said to have sufficient hardness for saws and similar tools. The ranges specified in the Haynes patent include alloys within the ranges recited in claim 5 of the ’934 patent. The Haynes patent does not teach the use of at least 7 per cent molybdenum as recited in claim 4 of the ’935 patent.
An earlier Haynes patent, 1,057,423, issued in 1913, discloses tool alloys of cobalt with any two metals in the chromium, tungsten, and molybdenum group. These alloys did not include nickel. This early Haynes patent was held to be infringed by a Chesterfield alloy including cobalt, nickel, chromium, tungsten, carbon, and impurities. See Haynes Stellite Co. v. Chesterfield, 8 F. 2d 765, and 22 F. 2d 635. The Chesterfield alloy held to infringe Haynes had a composition within the ranges recited in claim 5 of the ’934 patent here in suit.
Austrian patent 80,117, issued in 1918, discloses cutting tool alloys having a matrix of metals from the iron group alloyed with one another, and having hard borides or sili-cides embedded in the matrix. The Chesterfield patents mention boron carbide and silicides. It is believed that a mere substitution of hard carbides for the hard borides or silicides *843 in the cobalt-nickel alloy disclosed in the Austrian patent lacks patentable invention..
British patent 108,164, issued in 1917, discloses tool alloys that are said to be resistant to high temperatures. The British patent alloys comprise nickel or cobalt or both, plus chromium, tungsten, and silicon, but carbon is not mentioned specifically.
Marsh patent 811,859, issued in 1906, and also British patent 2129 of 1906, and French patent 362,774 of 1906, disclose an alloy for electrical resistance elements. The alloy comprises nickel and/or cobalt together with chromium or molybdenum or tungsten. Carbon probably was present as an impurity in these alloys.
Reference must also be made to German patent 270,750, issued in 1914, disclosing an alloy for gas turbine parts and said to be resistant to high temperatures. The German alloy comprised cobalt to which nickel could be added, plus chromium.
In view of the several patents discussed above, it is clear that Chesterfield was not the first to teach high temperature alloys containing both cobalt and nickel or alloys containing hard carbides embedded in a matrix of cobalt and nickel.
The two claims in suit are so broad as to cover alloy compositions which fall within the ranges taught by the prior art patents. Defendant’s expert, an experienced metallurgist and patentee in the field of modern high-temperature-resistant alloys, derived from the prior art patents a number of alloy compositions falling directly within the broad ranges recited in the claims in suit. Even though such experts may possess and utilize the twenty-twenty vision of hindsight, it is clear that many alloys within the ranges claimed by Chesterfield would have been obvious, at the time the Chesterfield applications were filed, to a person having ordinary skill in the metal alloy art. Specific alloys discovered within known broad ranges may involve patentable invention where new and unexpected results and properties are found. The Chesterfield patent claims in suit do not claim specific alloys, but claim broad ranges of compositions including inferentially from 21.5 to 82.5 per cent of metals forming hard carbides. It appears questionable whether an alloy containing *844 22 per cent cobalt and nickel plus 78 per cent chromium and molybdenum plus a small amount of carbon could be an alloy of the properties described in the Chesterfield specifications, yet such an alloy falls within the broad terminology of the claims in suit. The specifications suggest that the total amount of cobalt and nickel should be between 30 and 70 per cent, but the claims are not so limited. A patent claim is invalid as too broad when it covers alloys which would not serve the purpose of the alleged invention. See Charles J. Cooke v. United States, 113 C. Cls. 65, 80. The patent statutes provide for a specification separate from the patent claims, and require that the claims particularly point out and distinctly claim the subject matter which the applicant regards as his invention. It is the claim which measures the grant to the patentee. It is also clear that the claims fail to perform their function when they overclaim the invention. When they do so to the point of invalidity, such claims are not saved by resort to the specifications. Graver Tank & Mfg. Co., Inc., et al. v. Linde Air Products Company, 336 U. S. 271. It is apparent that experimentation is necessary within the broad ranges recited in the claims in suit in order to determine what alloys, other than those specifically set forth in the specifications, have the qualities suitable for use in cutting tools. The two claims in suit reciting formulae which require experimentation are indefinite and invalid. Davis Airfoils, Inc. v. United States, 129 C. Cls. 514, 516.
With respect to the issue of infringement, the plaintiff contends that certain alloys identified as S-816, 422-19, and 6059 infringe the claims in suit. The S-816 alloy, developed and used for supercharger parts and for buckets or blades in gas turbines, has a specific composition set forth in the findings. The S-816 alloy of cobalt, nickel, chromium, and other metals and non-metals contained .32-.43 per cent carbon and 3.5-4.5 per cent molybdenum. Claim 5 of the ’934 patent specifies .5-3.5 per cent carbon, and claim 4 of the ’935 patent specifies 7-35 per cent molybdenum. The S-816 composition is thus outside the limits recited in the claims in suit. In view of the prior art, plaintiff may not extend the broad ranges recited in the claims to cover alloys beyond the claim *845 limits. In litigation involving an alloy claim, Circuit Judge Simons stated:
In a crowded art, and particularly one dealing with alloys, where, as already noted, small changes of percentages often produce alloys of totally different characteristics and where, as here, the inventors have precisely limited their invention to the percentages recited in the claim, we are precluded from interpreting as within the monopoly of the patent that which the inventors meticulously excluded. The claim calls for 0.5 to 7% nickel. It is demonstrated by the evidence that the defendant’s pistons do not reach this minimum in nickel content. It is true that they approach it, the nickel range being from .04 to 0.45. The court below thought that this deficiency in nickel made departure from the patented formula merely colorable, although it was strongly urged that the presence of nickel was accidental only and an impurity rather than an ingredient. The evidence, however, discloses that such minute percentage of nickel has no substantial effect upon the alloy. According to Dr. Jeffries the nickel content lowered thermal expansivity but little, and achieved but minimum increase in initial hardness. The defendant gained hardness by a percentage of manganese which Dr. Jef-fries conceded was not only a very good hardener but helped to reduce the coefficient of expansion. There was, moreover, evidence that there would have been no difference in the alloy if the nickel had been entirely omitted. In the light of this exposition, with the burden of proof upon the plaintiff to establish infringement, we are unable to conclude that it was sustained. Aluminum Co. of America v. Thompson Products Inc. 122 F. 2d 796, 800, CA-6.
It is apparent from the discussion above that the claims in suit, if valid, are not infringed by defendant’s use of the S-816 alloy containing less carbon and less molybdenum than defined in the claims.
The 422-19 alloy was also a cobalt-nickel alloy with chromium, molybdenum, carbon, and other metals and nonmetals. The 422-19 alloy comes within the broad ranges recited in the two patent claims in suit, and actual use by the defendant would constitute infringement of said claims if the claims are valid. However, the evidence shows that a portion of the 422-19 alloy procured by the defendant was used only for testing and for experimental purposes, and *846 there is no evidence that the remainder was used other than experimentally. Experimental use does not infringe. In a patent infringement case, District Judge Rif kind said:
The accused devices * * * can be eliminated _ from consideration for it affirmatively appeared, without contradiction by the plaintiff, that defendant built that device only experimentally and that it has neither manufactured it for sale nor sold any. Dugan, v. Lear Avia, Inc. 55 F. Supp. 223, 229 (1944).
This principle was applied earlier by District Judge Seymour, who said:
It is true that, if an infringing machine is made or used as an experiment merely, it does not infringe former patents. Bonsack Mach. Co. v. Underwood, 73 Fed. 206, 211 (1896).
The claims in suit, if valid, are not infringed by defendant’s experimental use of the accused 422-19 alloy.
The 6059 alloy was likewise a cobalt-nickel alloy with chromium, molybdenum, carbon, and other metals and nonmetals. The composition differs from the 422-19 alloy mainly in having less cobalt and more nickel. The maximum molybdenum content of 6059 alloy is 6.5 per cent, which is less than the 7.0. per cent minimum recited in claim 4 of the ’935 patent. The ’935 claim was not infringed by the 6059 alloy. The minimum nickel content of 30 per cent in 6059 alloy is the same as the maximum nickel content of 30 per cent recited in claim 5 of the ’934 patent. Plaintiff’s metallurgical expert testified that 6059 alloy was used experimentally. As pointed out above, experimental use is not an infringing use. It is noted that plaintiff has stated that 6059 alloy does not make full use of the plaintiff’s patented invention.
The claims in suit, if valid, are not infringed by defendant’s use of the accused 6059 alloy.
Summarizing the foregoing discussion, it is concluded that the two claims in suit are clearly invalid over the prior art, and that if these claims are construed to be valid, then the defendant’s procurement and/or use of alloys of the agreed composition of S-816,422-19, and 6059, does not infringe said claims. The petition should be dismissed.
*847 FINDINGS OF FACT
1. This is a patent suit arising under the provisions of Title 28, U. S. C., Section 1498, for the alleged infringement of United States Letters Patent Nos. 1,698,934 and 1,698,935, issued to Chesterfield Metal Company, Detroit, Michigan, a corporation of Michigan, on January 15,1929. On October 31, 1938, both patents were reassigned by the corporation to the plaintiff, inventor named on the patents. The plaintiff has been the owner of legal title in and to said patents in suit since said date of reassignment. The plaintiff is a citizen of the United States.
2. The parties agreed at pretrial to a separation of issues for trial, and that the issues of validity of the patents and of infringement of the patents by the defendant be first determined upon full proofs, findings of fact, and argument of counsel. The accounting period, if any, with respect to patent 1,698,93’5 is from July 7, 1943, to January 15, 1946, and the accounting period, if any, with respect to patent 1,698,934 is from June 21, 1944, to January 15, 1946. The plaintiff has waived any right to interest on any judgment in this case for the period May 1,1950, to October 3,1955.
3. Patent 1,698,934, hereinafter referred to as ’934, is entitled “Alloy and Method of Making the Same.” Patent 1,698,935, hereinafter referred to as ’935, is entitled “High-Speed Alloy.” The applications for patents on which the patents in suit matured were filed December 1, 1924. The plaintiff does not contend for a date of invention earlier than said date. The plaintiff relies on claim 5 of his ’934 patent, and relies on claim 4 of his ’935 patent.
4. The specification of the ’934 patent includes the following language:
This invention relates to alloys, more particularly those designed for use in the production of high speed cutting tools.
* $ $ * *
It is necessary that alloys for such purposes have the property of “red hardness” so that a tool made therefrom may maintain its cutting edge after the same has become red hot.
*848 In addition to heat resistance the alloy must also possess abrasive hardness and, for this purpose, should contain embedded in the metallic matrix, hard crystals, usually metallic carbides.
The principal object of this invention is to improve the matrix of carbide containing alloys of this character to increase their strength and heat resistance and also reduce their liability to flake, crack or splinter during use.
* $ ¡Ü * %
I have found that an alloy formed of hard carbides and a matrix composed of both cobalt and nickel as its basal components gives a much superior cutting tool to one made with either cobalt or nickel alone.
* ❖ * * *
The chief function of the cobalt and nickel appears to be that of producing a strong, tough, heat resisting matrix for the carbides of the chromium group or other group of metals. Neither cobalt or [sic] nickel possesses the affinity for carbon, that is possessed by chromium or tungsten for example, so that it is probable that there is little or no carbide of either cobalt or nickel in my alloys.
The amount of carbon by weight in my alloys is comparatively slight, say 1.50% but the proportion of carbide by volume may be as high as 20 to 25% of the entire alloy. This follows from the great differences in specific gravity of carbon and the metals with which it combines to form carbide. In view of this large content of non-metallic compounds the composition of the matrix is of the utmost importance. It will also be evident that since these alloys may be regarded as a mass of carbide crystals embedded in a strong, tough, heat resisting matrix, a variety of carbides may be used with a matrix having as its basal constituents both cobalt and nickel.
These carbides are soluble to a certain extent in the molten alloy so that unless the carbon content exceeds certain limits depending upon the nature and proportion of the metals forming the alloy, the latter on cooling will not contain free carbide crystals but only carbide in solid solution. While carbide in solid solution has a hardening effect it is not the desired abrasive hardness which results from the presence of free carbide crystals. The carbon content of the alloy should, therefore, be high enough to provide a substantial proportion of free carbide crystals in the alloy.
*849 _ Ordinarily, alloys made in accordance with this invention will consist of cobalt, nickel, chromium and tungsten with a small amount of carbon.
‡ ‡
In certain cases a wider range of proportions may be employed such as those lying with [in] the following percentages :

Per cent.

Cobalt- 10 to 45
Nickel- 7 to 30
Chromium-20 to 45
Tungsten-10 to 45
The total amount of cobalt and nickel should be between 80 and 70%.
* ❖ ^4
Usually the amount of carbon in the alloy will be between 1 and 2.5%, for example around 1.5% although in some cases it may be as low as 0.5% or as high as 3.5%. It is desirable on the one hand to have enough carbon to produce free carbide cystals [sic] and on the other hand not enough to cause the formation of particles of graphitic carbon throughout the alloy, as the presence of graphitic carbon greatly reduces the strength of the alloy.
* * # $ $
The temperature employed for fusing the constituents may be from 1750° to 1950° C. according to conditions. As these alloys do not respond to heat treatment, as does steel, at lea,st at a temperature below 1100° C. the alloy must be formed into the desired shape by casting and then grinding instead of by forging.
5. Claim 5 of the ’934 patent reads as follows:
An alloy comprising 10 to 45% cobalt, 7 to 30% nickel, and 0.5 to 3.5% carbon, the remainder of the alloy consisting chiefly of metal capable of forming hard carbide.
The broad ranges recited in claim 5 are not supported by the several examples of suitable alloys set forth in the ’934 patent specification. The examples do not disclose an alloy with as little as 7 per cent or as much as 30 per cent nickel.
6. The specification of the ’935 patent is essentially similar to that of the ’934 patent except that the use of molybdenum *850 is described in lieu of tungsten. The ’985 patent specification likewise states that the invention relates to alloys, and more particularly to those designed for use in the production of high-speed cutting tools. The ’935 specification includes the following language:
* * ■* * *
In certain cases a wider range of proportions may be employed such as those lying within the following percentages.

Per cent.

Cobalt_15 to150
Nickel_ 7 to 30
Chromium_20 to 45
Molybdenum_ 7 to 35
The total amount of cobalt and nickel should be between 30 and 75%.
# * sfi * ❖
7. Claim 4 of the ’935 patent reads as follows:
An alloy comprising 15 to 50% cobalt, 7 to 30% nickel, 20 to 45% chromium, and 7 to 35% molybdenum, with a small amount of carbon.
The broad ranges recited in claim 4 are not supported by the several examples of suitable alloys set forth in the ’935 patent specification. The examples do not disclose an alloy with as little as 15 per cent or as much as 50 per cent cobalt, or an alloy with as little as 7 per cent nickel, or an alloy with as little as 20 per cent or as much as 45 per cent chromium, or an alloy with as little as 7 per cent or as much as 35 per cent molybdenum.
8. More briefly stated, the patents disclose an alloy consisting essentially of a matrix of both nickel and cobalt in which hard carbide particles are embedded. The matrix is stated to be of such character that it is strong, tough, and heat-resistant. The alloy produced is stated to have “red hardness”, heat resistance, and a reduced liability to flake, crack or splinter during use. The hard carbide particles may be formed from metals of the chromium group (chromium, tungsten, molybdenum, and uranium) or from other metals capable of forming hard carbides.
9. The patent application which resulted in the ’934 patent was filed as a continuation-in-part of an earlier- patent ap *851 plication, S. N. 493,108, which plaintiff subsequently abandoned. Claims 1,2 and 3 of the ’934 patent were transferred thereto from the earlier S. N. 493,108 application. In said earlier application Chesterfield stated:
The improved alloy of this invention is preferably a quaternary alloy composed of the following metals: Nickel, chromium, tungsten and cobalt. However, these metals may be replaced by similar metals of corresponding groups having like properties,. as for instance, the tungsten may be replaced by uranium. or molybdenum in whole or in part, and also by tellurium or selenium, or in fact any of the metals of the chromium group, and also may be replaced in whole or in part by vanadium or zirconium. The chromium may also be replaced in part by some similar metals of its groupd [sic] heretofore mentioned. The nickel and cobalt may. also be interchangeably used, one replacing the other in different proportions.
The statement quoted above was canceled from the early Chesterfield application after the Patent Office cited prior patents including Haynes patents 1,150,113 and 1,057,423. The original product claims in the patent application which resulted in the ’934 patent all recited an alloy for high-speed tools or for high-speed cutting tools. During prosecution of the application the claim subjects were broadened to recite alloy compositions fer se, as well as a high-speed tool and an alloy for high-speed tools.
10. Elements, including the metals, when tabulated in the order of their atomic numbers, show a periodic variation in most of their properties. In such a periodic table of the elements, the elements in each vertical column or group are of related character. The iron group metals include iron, cobalt, and nickel. The chromium group metals include chromium, molybdenum, tungsten, and uranium. Manganese and columbium are in other groups.
11. The defendant contends that claim 5 of the ’934 patent and claim 4 of the ’935 patent are invalid over the disclosures of prior domestic and foreign patents. The prior art relied upon by defendant is identified as follows:
*852 UNITED STATES - PATENTS
Fahrenwald- 1, 346,188 1920
Fahrenwald- 1,357,650 1920
Chevenard- 1,489,116 1924
Haynes_ 1,150,113 1915
Haynes- 1,057,423 1913
Marsh_ 811,859 1906
Fahrenwald_ 1, 357,549 1920
FOREIGN PATENTS
Austrian_ SO, 117 1918
British_ 108,164 1917
British- 2,129/06 1906
French- 362,774 1906
German_ 270,750 1909
British-18, 212/14 1914
12. During the prosecution of the several Chesterfield applications for letters patent, the United States Patent Office cited Haynes 1,057,423 and Fahrenwald 1,357,549 against the application resulting in the ’934 patent; cited Austrian 80,117 against the application resulting in the ’935 patent, and cited Haynes 1,150,113 and 1,057,423 against the S. N. 493,108 application for patent. The other patents listed in finding 11 were not cited against the ’934 and ’935 applications by the Patent Office.
13. A chart is attached hereto showing in tabular form the alloy compositions of the claims in suit, of the accused alloys, and some of the compositions disclosed in the several prior art patents. The compositions disclosed in Fahrenwald 1,357,550 and British 2,129/06 are not tabulated and are generally similar to the compositions disclosed in other patents included in the chart.
14. Fahrenwald patent 1,346,188 discloses alloys for firearms and ordnance. The alloys are described as resistant to corrosion by combustion products and by atmospheric conditions, and also are said to have sufficient mechanical strength to endure the strains to which ordnance devices are subjected. The Fahrenwald alloys consist essentially of one or more iron group metals combined with one or more chromium group metals. Carbon and silicon may be present in case their quantities are small, such as .5 per cent or less. Among the several examples of alloys disclosed by this Fahrenwald patent is an alloy designated (f) comprising:
*853 Any two iron group metals_ 75-95%
Tungsten or molybdenum_ 5-25%
Small amounts of carbon, silicon and manganese (the carbon being .5% or less).
The Fahrenwald alloy (g) is said to comprise:
Any two iron group metals_ 70-90%
Chromium and one other metal from the chromium group-10-30%
Small amounts of carbon (.5% or less) etc.
The Fahrenwald alloy (h) comprises:
Iron or nickel_ 70-90%
Cobalt_ 5-20%
Chromium or tungsten_ 5-25%
Small amounts of carbon (.5% or less) etc.
The ranges disclosed for Fahrenwald alloy (f) include an alloy of 45 per cent cobalt, 30 per cent nickel, 24.5 per cent tungsten, and .5 per cent carbon. Such an alloy is included in the terms of claim 5 of the ’934 patent. The ranges disclosed for Fahrenwald alloy (g) include an alloy of 43 per cent cobalt, 27 per cent nickel, 15 per cent chromium, 14.5 per cent tungsten, and .5 per cent carbon. Such an alloy is included in the terms of claim 5 of the ’934 patent. The Fahrenwald alloy (h) specifies the use of both nickel and cobalt together with chromium or tungsten, and could include a small amount of carbon. The Fahrenwald specification further discloses that cobalt can be employed in substitution for nickel or in addition thereto. The specification teaqhes that for some purposes the very best alloy appears to be a quaternary alloy produced by adding chromium to alloy (f). The ranges disclosed in Fahrenwald alloy (g) would include an alloy of 40 per cent cobalt, 30 per cent nickel, 20 per cent chromium, 9.5 per cent molybdenum, and .5 per cent carbon. Such an alloy is included in the terms of claim 4 of the ’935 patent.
15. Fahrenwald patent 1,357,549 discloses alloys resistant to high temperatures and useful for furnace parts, metallurgical and chemical apparatus, cutting tools, and tools for working hot metal. These Fahrenwald alloys consist essentially of iron, cobalt, and chromium, with small amounts of carbon, silicon, and manganese. The specification teaches that the addition of 1-8 per cent tungsten or molybdenum greatly increases the resistance to distortion at high tern- *854 peratures. The Fahrenwald patent states that cobalt in amounts of 10 per cent or greater has a hardening effect superior to that produced by nickel, and that in amounts less than 10 per cent the cobalt is not superior to nickel. While this patent teaches that nickel has a hardening effect similar to that of cobalt at low percentages, the patent does not specifically teach that cobalt and nickel should be used together, or that nickel may be substituted for iron in the alloys described. This Fahrenwald patent is pertinent to the claims in suit mainly in disclosing that 8 per cent molybdenum may be used in a high-temperature-resistant alloy containing 20 per cent chromium, as recited in claim 4 of the ’935 patent in suit.
16. Fahrenwald patent 1,357,550 discloses chemical apparatus and alloys for making the same. The alloys are said to be inexpensive, chemically resistant, strong enough to resist breakage and soft enough for machining to shape. The alloys are said to be useful for tanks, valves, pipes, fittings, evaporation pans, and stirrers. The improved alloys are said to consist essentially of chromium, an iron group metal, and a second metal from the chromium group. The. specification states that carbon and silicon may be present but their quantity should be small. It further states that the inventor does not confine himself to the use of only one iron group metal or only one molybdenum-like metal in his improved alloy. Typical formulas are disclosed in this Fahrenwald specification. The limiting proportions by weight of the alloys are disclosed in formula (D) as—
Chromium_ 40-60%
Iron group metal_10-40%
Molybdenum-like metal_10-20%
Carbon and silicon are listed in specific formulae as less than 1 per cent each, but the specification states that somewhat larger quantities will not interfere with the use of the alloy for most purposes. Certain claims of the Fahrenwald patent clearly disclose that the alloys may contain more than one of the iron group metals. An alloy consisting of 20 per cent cobalt, 20 per cent nickel, 40 per cent chromium, 19.5 per cent tungsten or molybdenum, and .5 per cent carbon is included within the ranges taught by the Fahrenwald *855 1,357,550 patent, and is within the ranges recited in claim 5 of the ’934 patent and claim 4 of the ’935 patent.
17. Chevenard patent 1,489,116 discloses an alloy for high temperature measuring instruments. This patent gives the following composition:
Nickel or cobalt. 90-70%
Chromium_ 10-25%
Tungsten_ 0-5%
Carbon_ 0.2-0. 6%
Manganese_ 1-3%
The Chevenard specification does not state that the alloy should include nickel and cobalt. Nickel and cobalt are recognized as substantial equivalents and one may be used to replace the other under many circumstances. The Cheve-nard specification does state that the tungsten may be replaced by an equivalent quantity of molybdenum. The disclosure of this patent does not respond to the recital of the claims in suit since it does not clearly teach the use of both nickel and cobalt in the alloys.
18. Haynes patent 1,150,113 discloses alloys containing cobalt and chromium plus iron or nickel to provide a softening influence. The specification states:
* * * Nickel in a chromium-cobalt alloy has some of the softening influence of iron but no.t in so marked a degree and the. iron-containing alloys are tougher, both hot and cold, and are therefore easier to work. These ternary cobalt-chromium-iron alloys are of sufficient hardness to serve efficiently for saws and similar tools; being as hard or harder than the ordinary tempered steel employed for such purposes, but not so hard as to prevent ready re-sharpening with a file or grindstone. A similar alloy containing nickel, replacing part or all of the iron in a cobalt-chromium-iron alloy has some of the same advantages. As noted however the softening influence of nickel in such alloys is not as great as that of iron. * * *
The Haynes specification mentions various percentages for various alloys depending on the properties desired in the final alloy. The ranges include: *856 Other, metals of the chromium group include molybdenum and tungsten, and 2-3 per cent molybdenum is specifically mentioned in this Haynes patent specification. The ranges recited in claim 5 of the ’934 patent cover alloys included in the ranges taught by the prior Haynes patent. The Haynes patent does not disclose the use of as much as 7 per cent molybdenum, the lower molybdenum value recited in claim 4 of the ’935 patent.
*855 Cobalt_ 5-40%
Iron_ 10-20% (Iron may be replaced by nickel)
Chromium_ 20-30%
Other metals of chromium group_ 2-5%
Carbon__ 2-1.0%
*856 19. Haynes patent 1,057,423 discloses cobalt alloys for tools and cutting implements requiring the qualities of hardness, toughness, and elasticity. The alloys consist essentially of cobalt and two or more metals of the chromium group. Alloys of cobalt and chromium with tungsten and/or molybdenum are disclosed. The specification teaches that the ternary alloys reach an unforgeable condition when the percentage of molybdenum is somewhat smaller than in the case of using tungsten as the third constituent. This Haynes patent does not disclose the use of nickel. There is evidence that nickel and cobalt were recognized as having similar properties and that one might be substituted for the other. The disclosure of this Haynes patent does not respond to the recital of the claims in suit since it does not mention the use of nickel fer se.
29. Haynes patent 1,057,423 was involved in litigation some thirty years ago against Chesterfield. A Chesterfield alloy containing—
Cobalt_ 26. 39%
Nickel_ 14.17%
Chromium-28. 98%
Tungsten _ 26. 90%
Carbon_ 1.29%
Impurities. 2.27%
was held to infringe this Playnes patent claiming an alloy composed of cobalt, chromium, and tungsten. The Chesterfield addition of nickel and carbon to the Haynes alloy was held not to avoid infringement of the Haynes patent. Haynes Stellite Co. v. Chesterfield, 8 F. 2d 765, and 22 F. 2d 635. The Chesterfield alloy tabulated above is included in the ranges recited in claim 5 of the Chesterfield ’934 patent in suit.
*857 21. The alloys disclosed in Haynes patent 1,150,113, -filed two years after the filing date of Haynes patent 1,057,423, differ from the earlier patent alloys by specifying the addition of iron or nickel and carbon to the earlier cobalt-chromium-tungsten alloy. The combined disclosures of Haynes patents 1,057,423 and 1,150,113 teach the alloys recited in claim 5 of the ’934 patent in suit.
22. Austrian patent 80,117 discloses alloys for cutting tools. The alloys are said to have matrices stable at temperatures higher than the temperature limits of matrices used for high-speed steels. The Austrian patent describes alloys having a matrix of metals of the iron group, such as iron, cobalt, nickel and manganese, singly or alloyed with one another. The patent states that the carbides Embedded in the high-speed steel matrix are replaced by harder compounds such as silicides and borides. As an example, the Austrian patent discloses an alloy containing
Cobalt_ 53-71%
Chromium_ 10-15%
Tungsten_ 10-15%
Molybdenum 5-10%
Boron_ 4-7%
This patent also discloses that cobalt and nickel could be alloyed with each other. The specifications of the ’934 and ’935 Chesterfield patents in suit both mention the hardening effect of silicides as harder than carbides, and both mention the use of boron carbide as a hardening element and de-oxidizer. The Austrian patent example modified as suggested by using cobalt and nickel in place of cobalt, and by using carbon in place of boron or boron carbide, provides an alloy of the general character described in the Chesterfield patents in suit.
23.British patent 108,164 discloses alloys comprising predominantly nickel or cobalt or both. The alloy also includes chromium with another chromium group metal such as tungsten, and may include up to 10 per cent silicon. The alloy is said to withstand a very high degree of heat (3000° F.). The alloy is said to be useful for cutlery, tools, instruments, and laboratory utensils. Alloys taught by the British patent include alloys comprising—
*858 Cobalt and nickel_ 55-80%
Chromium_ 10-25%
Tungsten_' 8% mas.
Copper, aluminum, silicon, manganese, boron, etc., in small amounts less than 10% max.
The British patent does not mention the presence of carbon or carbides, nor does it refer to the equivalence of silicon or boron to carbon.
24.Marsh patent 811,859 discloses an alloy for use as an electrical resistance material. The Marsh alloy comprises
Nickel or cobalt or both_More than 50%
Chromium or molybdenum or tungsten- Less than 50%
The Marsh specification does not mention the use of carbon, carbides or their equivalents. Defendant’s expert testified that in the period covered by the prior art metallic elements were not readily available in a pure state, but contained impurities, especially carbon.
25. British patent 2129/06 corresponds in general to Marsh patent 811,859, discussed in finding 24. Since the British patent discloses nothing more pertinent than the domestic patent, further mention is unnecessary.'
26. German patent 270,750 discloses a cobalt-chromium alloy for machine parts, especially for gas and steam turbines, exposed to great mechanical stress at high temperatures. The alloy comprises
Cobalt _ 67-80%
Chromium_ 20-33%
and iron or nickel or some other metal may be added up to 25 per cent. Such alloys are said to be capable of being cold-forged, and capable of use for the turbine wheels, buckets, nozzles, and valves, and those parts in which combustion or superheating occurs. The German patent does not mention the presence of tungsten or molybdenum, nor does it mention the inclusion of carbon specifically or as an impurity.
27. British patent 18,212/14 discloses alloys insoluble in acids, and comprising one or more metals of the iron group and one or more metals of the chromium group. As an example, this British patent describes alloys comprising
Nickel, cobalt, iron_ 65-72%
Chromium_ 25-34.5%
Molybdenum or tungsten- . 3-5%
*859 This British patent does not mention the inclusion of carbon specifically or as an impurity.
28. Claim 5 of Chesterfield patent ’934 recites an alloy of cobalt, nickel, carbon, and a metal capable of forming a hard carbide. Chromium, molybdenum, and tungsten are capable of forming hard carbides. Alloys of cobalt amd nickel, carbon, and one or more chromium group metals are taught by prior patents to Fahrenwald 1,346,188, Fahrenwald 1,357,550, and Haynes 1,150,113. These three prior patents all disclose ranges which include alloys coming within the broad ranges recited in claim 5 of the ’934 patent in suit. Alloys of cobalt and nickel and one or more chromium group metals are also taught by Austrian patent 80,117, British patent 108,164, Marsh patent 811,859, German patent 270,750, and British patent 18,212/14, but these patents do not specifically teach the inclusion of carbon. The inclusion of boron is mentioned in Austrian patent 80,117 and British patent 108,164, and boron carbide is mentioned in the patents in suit but not in the claims in suit. Claim 5 of Chesterfield patent ’934 covers alloys within the alloy compositions disclosed by the prior patents to Fahrenwald 1,346,188, Fahren-wald 1,357,550, and Haynes 1,150,113, and is invalid.
29. Claim 4 of Chesterfield patent ’935 recites an alloy of cobalt, nickel, chromium, molybdenum, and small amounts of carbon. Alloys of cobalt and nickel, chromium, molybdenum, and carbon are taught by the prior patents to Fahren-wald 1,346,188, Fahrenwald 1,357,550, and Haynes 1,150,113. Austrian patent 80,117, Marsh 811,859, and British 18,212/14 also disclose the use of molybdenum in cobalt-nickel alloys, and teach that molybdenum may be substituted for tungsten in such alloys. Claim 4 of Chesterfield ’935 covers alloys within the alloy compositions disclosed by. the prior patents to Fahrenwald 1,346,188, Fahrenwald 1,357,550, and Haynes 1,150,113, and is invalid.
30. Claim 5 of the ’934 patent in suit specifies that the remainder of the alloy consists chiefly of a metal capable of forming a hard carbide. The patent states that metals of the chromium group, comprising chromium, tungsten, molybdenum, and uranium, form hard carbides which are suitable for the purpose, although metals of other groups may *860 also be used. A metallurgical expert subpoenaed by plaintiff testified that claim 5 is very broad and vague as to the elements other than cobalt, nickel, and carbon, and that metal capable of forming a hard carbide applies roughly to 20 elements in the periodic system of chemical analysis. Plaintiff’s patent expert testified that there are 24 or 25 metals which form carbides. The patent specification does not list these other metals or other groups of metals that form carbides and that may also be used. The evidence does not show whether or not every metal capable of forming a hard carbide would be satisfactory in a cobalt-nickel matrix of the wide ranges included in claim 5. Experimentation and testing in the various ranges and with various metals would be required to produce a satisfactory alloy of the character and purpose taught by the Chesterfield specification and within the broad scope of claim 5. Claim 5 of the ’934 patent is indefinite and does not particularly point out and distinctly claim an identifiable invention.
31. Claim 4 of the ’935 patent in suit specifies an alloy of cobalt, nickel, chromium, and molybdenum, with a small amount of carbon. The patent states that the amount of carbon by weight in the alloys is comparatively slight, say 1.50 per cent, and that the carbon content of the alloy should be high enough to provide a substantial proportion of free carbide crystals in the alloy. The patent further states that usually the amount of carbon will be between 1 and 2.5 per cent although in some cases it may be as low as 0.5 per cent or as high as 3.5 per cent. None of the alloy examples given in the patent specification state the percentage of carbon necessary. Experimentation and testing would be required to determine what amount or amounts of carbon are necessary to produce a satisfactory alloy within the broad recital of claim 4. Claim 4 of the ’935 patent is indefinite and does not particularly point out and distinctly claim an identifiable invention.
32. The three alloys accused as infringements in this case are those known as S-816, 422-19, and 6059. The general composition of these alloys is tabulated in the chart noted in finding 13.
*861 33. The S-816 accused alloy was made by the Allegheny Ludlum Steel Corporation. The parties have stipulated that its composition was as follows:
Cobalt_40% minimum to 48.68% maximum
Nickel_19.0-21. 0%
■Iron_5.0% maximum
Chromium_ 19. 0¡-21.0%
Molybdenum_ 3. 5- 4. 5%
Tungsten _ 3.5- 4.5%
Manganese_ 1.0- 2. 0%
Columbium_ 3. 5- 4.5%
Carbon _ • 32- . 43%
Silicon_1.0% maximum
Sulfur_ .03%
Phosphorus_ .04% "
Alloys of the S-816 type are disclosed in United States patent 2,397,034, issued March 19,1946, to Allegheny Ludlum Steel Corporation, assignee of Gunther Mohling, plaintiff’s metallurgical expert witness and a recognized authority on heat-resisting alloys.
34. The S-816 alloy was evolved from an alloy known as S-497, and from an alloy known as S-495. Alloys of the S-816 type were developed to produce a heat-resisting alloy having strength and structural stability and forgeable for use in superchargers and gas turbines. A gas turbine bucket for a jet engine is in evidence as defendant’s exhibit 41, but said turbine bucket is made of cast vitallium, an unaccused alloy of cobalt, nickel, chromium, molybdenum, iron, and carbon. As tabulated in the Mohling patent identified above, the S-495, S-497, and S-816 alloys included:

8-495 8-497 S-816

Cobalt_None 19.36 43. 70
Nickel_^_ 19. 78 19.62 20.23
Iron_ 52. 21 32. 04 3. 54
Chromium_13. 89 14.17 19. 50
Molybdenum_ 4. 03 4. 01 3.93
Tungsten_ 4. 52 4.44 3.45
Carbon_ .46 . 52 , 47
Columbium_ 3.99 4.45 4.06
Other elements including silicon and manganese were also present. The evolution of S-816 during World War II included modifying S^495 by introducing and increasing cobalt, decreasing iron, and increasing chromium. Dr. Mohling testified that S-816 has now been forged “to the tune of several million pounds.” He testified that he first became *862 acquainted with the Chesterfield patents in suit shortly before the trial in October 1955. A book entitled “Symposium on Materials for Gas Turbines” published in 1946, identified as plaintiff’s exhibit K., contains a series of papers reporting on the progress of the research on high-temperature alloys including S-816 and many others. None of these reports mention the Chesterfield patents in suit which issued in 1929.
35. The S-495 alloy, developed prior to the accused S-816 alloy, was different from earlier high-temperature alloys in that S-495 contained balanced amounts of molybdenum, tungsten, and columbium, with a certain ratio between the columbium and carbon employed. Columbium is a hard-carbide-forming metal, and in S-495 it formed dispersed carbide particles in a nickel-iron matrix.. In the accused S-816 alloy a similar balanced ratio between columbium and carbon forms dispersed carbide particles in the nickel-cobalt matrix. The use of columbium as a hard-carbide-forming metal was not specifically taught by the Chesterfield ’934 and ’985 patents in suit. These Chesterfield patents disclose Chromium, tungsten and/or molybdenum as the preferred hard-carbide-forming metals.
36. The accused S-816 alloy contained a maximum of .43 per cent carbon. Claim 5 of the ’934 patent specifies a minimum of .50 and a maximum of 3.5 per cent carbon. The specification of the ’934 patent teaches that usually the amount of carbon will be between 1 and 2.5 per cent. The minimum .50 per cent carbon is a material and critical limitation in claim 5 of the ’934 patent. The accused S-816 alloy containing a maximum of .43 per cent carbon does not infringe claim 5 of the ’934 patent in suit.
37. Claim 4 of the ’935 patent specifies a small amount of carbon. The specification of the ’935 patent teaches that usually the amount of carbon will be between 1 and 2.5 per cent, for example, around 1.5 per cent, although in some qases it may be as low as .50 per cent or as high as 3.5 per cent. Interpreting the claim 4 recital in the light of the ’935 patent specification, a small amount of carbon means from .50 to 3.5 per cent carbon. The accused S-816 alloy containing a maximum of .43 per cent carbon does not infringe claim 4 of the ’935 patent in suit.
*863 38. There is evidence that if the carbon content of the S-816 alloy were raised from .43 to .50 per cent minimum, the alloy would become very hard to forge and would make the alloy relatively less stable.
39. Aeronautical Material Specification AMS 5765A issued in 1948 and revised in 1950 by the Society of Automotive Engineers, Inc., describes the composition and qualities of S-816 alloy and lists the carbon content as 0.32-0.42 per cent. The evidence indicates that variation in the carbon content of S-816 alloy between .1 and .7 per cent would not change its basic nature, but where used as a forged alloy, the carbon content of S-816 should be kept below .5 per cent as otherwise it is very hard to forge. The commercial use of the accused S-816 alloy by the defendant has been in the form of a forgeable alloy. The S-816 has been tested in cast form but use of the alloy in cast form has been primarily experimental. The evidence indicates that the alloy examples disclosed in the Chesterfield patents in suit are not forgeable alloys because of the high chromium and carbon contents. A microphotograph of S-816 alloy is defendant’s exhibit 30, and a microphotograph of a commercial Chesterfield alloy is defendant’s exhibit 31.
40. The S-816 alloy composition includes a range of 3.5-4.5 per cent molybdenum. Claim 4 of the ’935 patent specifies a range of 7-35 per cent molybdenum. The S-816 alloy used by the defendant does not infringe claim 4 of the ’935 patent in suit.
41. The S-816 alloy used by the defendant.does not infringe claim 5 of the ’934 patent and does not infringe claim 4 of the ’935 patent only if these two claims are construed to be valid over the prior art.
42. The 422-19 accused alloy had the following composition:
Nickel_14.0-16.0%
Iron_2.0% maximum
Chromium_1- 24.0-28.0%
Molybdenum_5.5-7.0%
Manganese_1.0% maximum
Carbon_.40-.50%
Silicon_1.0% maximum
Cobalt_Balance (44.5-52.1%)
*864 The above composition of 422-19 alloy falls within the ranges recited in claim 5 of the ’934 patent, the molybdenum being recognized as a hard-carbide-forming metal. The composition also falls within the ranges recited in claim 4 of the ’935 patent, the 7.0 per cent maximum of molybdenum in 422-19 being the same as the 7.0 per cent minimum of molybdenum recited in the claim.
43. The 422-19 alloy was developed and tested for hardness in late 1941 and early 1942 in the course of experimentation conducted by Haynes Stellite Company to determine the feasibility of substituting nickel for some or all of the cobalt in cobalt-base alloys, cobalt then being in short supply. The tests were described in a report on cast bucket investigation dated January 12, 1942, defendant’s exhibit 49, page 13. The tests indicated that as nickel was substituted for some of the cobalt, use of the alloy at high temperatures had a less embrittling effect upon it. The 422-19 alloy is a heat-resistant alloy.
44. The defendant has admitted that it procured, within the accounting periods set forth in finding 2, a total of 3,679 pounds of an alloy designated as 422-19. The defendant has admitted that some of the foregoing 422-19 alloy was formed into 101 turbo-supercharger buckets delivered to an agency of the defendant for experimental use and testing. There is no evidence that defendant’s use, if any, of the remainder of said 422-19 alloy was other than experimental.
45. The 422-19 alloy, if used by the defendant other than experimentally, does infringe claim 5 of the ’934 patent and claim 4 of the ’935 patent, only if these two claims are construed to be valid over the prior art.
46. The 6059 accused alloy had the following composition:
Nickel_ 30.0-35.0%
Iron_ 2.0 maximum
Chromium- 23. 0-26.0%
Molybdenum_ 4. 5-6.5%
Manganese_ 1. 0% maximum
Carbon_ . 35-. 50%
Silicon_ 1.0% maximum
Cobalt_Balance (28.0-42.15%)
The above composition of 6059 alloy falls within the ranges recited in claim 5 of the ’934 patent. The minimum- 6059 nickel is the same as the maximum claim 5 nickel, and the *865 maximum 6059 carbon is the same as the minimum claim 5 carbon. The composition of 6059 alloy does not fall within the ranges recited in claim 4 of the 5935 patent. The maximum molybdenum in 6059 alloy is 6.5 per cent, whereas claim 4 of the ’935 patent recites a minimum molybdenum of 7.0 per cent.

*0

*865 47. The 6059 alloy was developed ah General Electric Company. Plaintiff agrees that seme alloys within the above-stated composition ranges for 6059 alloys would not infringe the claims in suit. Plaintiff agrees that with a nickel content of 35 per cent, a 6059 alloy would probably not achieve the alleged benefits of the Chesterfield invention in suit. The evidence indicates that a 6059 alloy does not have the high rupture strength at high temperatures which is exhibited by accused alloys 422-19 and S-816.
48. The defendant has admitted that it caused to be manufactured, purchased, and used some quantities of a 6059 alloy during the accounting periods set forth in finding 2. There is no conclusive evidence as to the amount of 6059 alloy procured, or of the nickel content thereof, or whether the defendant’s use of a 6059 alloy was experimental or otherwise.
49. The 6059 alloy, if used by the defendant other than experimentally, does not clearly infringe claim 5 of the ’934 patent, if said claim could be construed to be valid over the prior art, and does not infringe claim 4 of the ’935 patent.
50. There is no evidence that the three accused alloys in this case were conceived or developed from any information provided by the Chesterfield ’934 and ’935 patents in suit.
51. The three accused alloys were developed for possible use in the manufacture of blades or buckets for superchargers and for gas turbines. The required physical properties of alloys for use in high-speed superchargers and gas turbines are different from the properties required of alloys for use in a cutting tool. Turbine blades are required to withstand rotational stresses, corrosive action, thermal shock, and impact stresses of a character not generally applied to cutting tools.
52. Summarizing, claim 5 of the ’934 patent and claim 4 of the ’935 patent are found to be invalid over the prior art and to be invalid for indefiniteness. Moreover, if these two *866 claims are construed to be valid over the prior art and to be definite, the claims are not infringed by the accused S-816 alloy; the claims are not infringed by the experimental use of the accused 422-19 alloy, and the claims are not infringed by the use, if any, of all 6059 alloys.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that claim 5 of plaintiff’s patent 1,698,934 and claim 4 of plaintiff’s patent 1,698,935 are both invalid. It is also found that the claims are not infringed by the defendant. Plaintiff is not entitled to recover and his petition is ■'dismissed.