**ROLLS–ROYCE LIMITED, DERBY, ENG-LAND, a British Company**

v.

**The UNITED STATES.**

United Aircraft Corporation, Defendant-Intervenor.

No. 74–63.

United States Court of Claims.

Dec. 11, 1964.

Rehearing Denied April 16, 1965.

W. Houston Kenyon, Jr., New York City, for plaintiff, William T. Boland, Jr., and Kenyon & Kenyon, New York City, were on the brief.

William W. Fleming, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

C. Blake Townsend, New York City, for defendant-intervenor and Carroll G. Harper, Byerly, Townsend, Watson & Churchill, New York City, and Russell M. Lipes, Jr., East Hartford, Conn., were on the brief.

Before COWEN, Chief Judge, LARAMORE, DURFEE and DAVIS, Judges, and JONES, Senior Judge.

JONES, Senior Judge:

This is a suit against the United States, under 28 U.S.C. § 1498, for unlicensed use of plaintiff's patented invention. The Government has not filed an answer to the petition, but instead has moved for summary judgment based on the allegation that the patent claim sued upon is invalid. The United Aircraft Corporation, named by plaintiff in its petition as one of several accused manufacturers, has intervened and filed its own motion for summary judgment. The case is before us for the disposition of these motions.

Plaintiff is a British corporation. It is the owner of Gresham, Dunlop and Wheeler U.S. Patent No. 2,712,498, the patent here in suit, for "Nickel Chromium Alloys Having High Creep Strength At High Temperatures," issued July 5, 1955 upon an application Serial No. 94,-816 filed May 23, 1949. While that application was pending in the Patent Office, plaintiff claimed the benefit of the earlier filing date (June 1, 1948) in Great Britain, under the provisions of 35 U.S.C. § 119, of a corresponding application which later matured into British Patent No. 666,399. Claim 1 of the 2,-712,498 patent, the only claim here in issue, reads:

"A hot-workable nickel-chromium base alloy having a life to fracture under load of 15 long tons per square inch at 815°C. substantially in excess of 38 hours, said alloy consisting by weight approximately of 10% to 40% cobalt, 10% to 30% chromium, each of the three hardening elements molybdenum, aluminum and titanium within the respective approximate ranges 2% to 18% molybdenum, 0.2% to 8.6% aluminum and 0.2% to 4.4% titanium, the impurities iron and carbon not exceeding about 5% iron and 0.5% carbon, and the balance essentially nickel, said alloy being characterized in that the sum of the percentage of molybdenum plus twice the percentage of aluminum plus four times the percentage of titanium equals a figure within the range of 16 to 20."

This alloy appears to be useful in jet engines.

The Government, in its motion for summary judgment, points to Gresham and Hall U.S. Patent No. 2,497,667, for "Heat-Treatment of Nickel-Chromium Alloys," issued February 14, 1950 upon an application Serial No. 726,441 filed February 4, 1947. The 2,497,667 patent relates to a process, but it refers to an earlier patent application in discussing the alloys suitable for use in the process. This referred-to patent application is Gresham, Wheeler and Hall U.S. appli-

cation Serial No. 711,204 filed November 20, 1946 and later abandoned. The 711,204 application pertained to nickel-based alloys, and it disclosed as an example an alloy which was designated Alloy B. Alloy B has the following composition:

### ALLOY B

Aluminum . . . . . 4.30 per cent by weight.
Chromium . . . . . 24.60 per cent by weight.
Cobalt . . . . . . . . 26.70 per cent by weight.
Titanium . . . . . . 1.48 per cent by weight.
Molybdenum . . . 2.54 per cent by weight.
Silicon . . . . . . . . 0.59 per cent by weight.
Iron . . . . . . . . . . 0.37 per cent by weight.
Carbon . . . . . . . . 0.09 per cent by weight.
Calcium . . . . . . . Trace.
Nickel . . . . . . . . Remainder.

The 711,204 application stated that when tested under 15 tons per square inch at 800° C., Alloy B failed after 72½ hours. It is the Government's contention that since Alloy B meets all of the requirements of the claim here in suit, that claim is invalid by virtue of 35 U.S.C. § 102(e).

The intervenor's motion, in addition to its reliance on 35 U.S.C. § 102(e), states two other grounds in support of the requested summary judgment. First, it is said that a basic concept in the United States patent law has been that only the first inventor is entitled to a patent, and that the facts in his case show that Gresham, Dunlop and Wheeler were not the first inventors of the invention claimed in the 2,712,498 patent. Secondly, the intervenor contends that claim 1 of the 2,712,498 patent is unenforceable by reason of inequitable conduct of plaintiff in procuring the patent. The inequitable conduct charged is that, although plaintiff claimed the benefit of the prior British filing date, plaintiff never informed the United States Patent Office of a disclaimer entered in the British application before the 666,399 patent issued in England.

■ We shall discuss the intervenor's contentions first. It is difficult to understand the precise thrust of the first separate contention made by the intervenor. If it is meant that, after a prima facie showing that another applicant had earlier knowledge of the invention than the present patentees, these patentees must prove that they were the "first inventors," then this contention is not different from the one based on 35 U.S.C. § 102(e). On the other hand, there is some indication that by this contention the intervenor meant that once prior knowledge of an earlier applicant inconsistent with the allowance of the patent in suit has been shown, then the present patentees should not be allowed an opportunity to make themselves out to be the first inventors. We would, of course, disagree with such a contention. It is entirely inconsistent with the provisions for interference practice under 35 U.S.C. §§ 135, 146 and 102(g), and inconsistent with the so-called "swearing-back" affidavits allowed by the Patent Office under Rule 131 of its Rules of Practice in Patent Cases, 37 C.F.R. § 1.131 (1960). It is too self-evident to require the citation of authorities to show that one who is alleged to be a later inventor should be afforded the opportunity to show himself in fact to be the first inventor.

■■ The other contention of the intervenor raises the issue of inequitable conduct of plaintiff in procuring the 2,712,498 patent. The facts relating to this issue are complex and require explanation.[1] It appears that during the Second World War, plaintiff's employees were involved in metallurgical research for an alloy suitable for use in a military jet engine. Gresham, Wheeler and Hall, the applicants in U.S. application Serial No. 711,204 and all employees of plaintiff at that time, studied the effect of adding substantial amounts of cobalt to nickel-chromium alloys. Because cobalt was not readily available at that time, they used a commercially available dental al-

---

1. These facts are contained in plaintiff's briefs and affidavits. For the purposes of this motion they must be taken as true. On a trial on the merits of this case, these facts are, of course, still subject to dispute.

loy called "Vitallium" which consisted of about 66 percent cobalt, 6 percent molybdenum and 28 percent chromium. The researchers apparently considered the molybdenum content to be unnecessary but harmless. A result of this research effort was a patent application filed in Great Britain on November 28, 1945, and the corresponding United States patent application No. 711,204. The 711,204 application in the United States was later abandoned but the British application matured into British Patent No. 607,616, dated September 2, 1948. Both the 711,204 application and the British 607,616 patent contained examples showing tests made on Alloy B mentioned above although neither claimed an alloy containing molybdenum. Subsequently, Gresham, Dunlop and Wheeler, the patentees in the 2,712,498 patent (here in suit) and also employees of plaintiff, tested nickel-chromium alloys containing molybdenum. This work resulted in their applications for British patent No. 666,399 and the corresponding United States 2,712,498 patent. During the prosecution of their application in the United States Patent Office, the Examiner cited the British 607,616 patent (which disclosed Alloy B). This reference was removed by plaintiff by claiming the benefit of the prior filing date in Great Britain (June 1, 1948) of the 666,-399 patent.[2] The intervenor's charge of inequitable conduct stems from the fact that although plaintiff made a disclaimer in England in the 666,399 patent disclaiming Alloy B, this disclaimer was never brought to the attention of the Examiner in the United States Patent Office who examined the application for the 2,712,498 patent. Plaintiff's answer has shown, by affidavit of a British patent expert, that the disclaimer in Great Britain did not have the effect of con-

ceding priority, but that it was made only to avoid possible overlapping claims between the 666,399 and the 607,616 British patents. In any event, we think that the intervenor has not made out a case of such inequitable conduct as to vitiate the 2,712,498 patent since the underlying fact of the existence of the disclosure of Alloy B in the British 607,616 patent was known to the Examiner.

■ We are thus left with the main contention raised by these motions: The invalidity of the claim in issue by virtue of 35 U.S.C. § 102(e). This section of the patent statutes provides:

"A person shall be entitled to a patent unless—

\* \* \* \* \*

(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, \* \* \*."

The Government's contention [3] is essentially that Gresham, Dunlop and Wheeler were not entitled to the 2,712,498 patent because the invention embodied in claim 1 thereof was described in the 2,497,667 patent which was granted on an application for patent by another (Gresham and Hall) filed in the United States on February 4, 1947, which was before the invention date of Gresham, Dunlop and Wheeler. We are of the view that these motions must be denied because there is a disputed issue of fact concerning the date of invention of Gresham, Dunlop and Wheeler.

Plaintiff's first objection to the Government's contention, based on the case of Application of Schlittler, 234 F.2d 882, 43 CCPA 986 (1956), is that the 711,-204 abandoned application does not have prior art status by itself. In the Schlit-

2. Although the filing date for the British 66,399 patent (June 1, 1948) was later than the filing date for the British 607,-616 patent (November 28, 1945), it was earlier than the effective date of the 607,616 patent (September 2, 1948). Under our law, the prior art status of a foreign patent dates from its publication and not from its filing. Compare 35 U.S.C. § 102(e) with § 102(a).

3. Since the intervenor's contention with respect to this issue is essentially identical to the Government's, we shall treat them as one.

tler case, the Court of Customs and Patent Appeals held that a manuscript submitted for publication does not constitute prior knowledge from the date of submission within the meaning of 35 U.S.C. § 102(a). There is some dicta in the Schlittler case which tends to show that a disclosure in an abandoned application does not constitute such evidence of prior knowledge as will bar the allowance of a subsequent application. However, we find that the Schlittler case is inapplicable to the present situation for two reasons. First, the Government is not relying on the 711,204 abandoned application *per se,* but it is relying on the 2,497,667 patent which refers to the abandoned 711,204 application. Thus, we are dealing with an issued patent and not with an abandoned application. Secondly, the Schlittler case pertains to the operation of 35 U.S.C. § 102(a), and, more particularly, to the question of what would constitute "prior knowledge" of the invention by others. That case is not concerned with what is meant by the word "described."

Plaintiff next objects to the Government's contention on the ground that the invention was never described in the 2,-497,667 patent. As we have already pointed out, this 2,497,667 patent is a process patent but it refers to the 711,-204 application in discussing the alloys which might be used in the process. We quote the pertinent language of the 2,-497,667 patent:

"An alloy as proposed by the applicants and Marcus Alan Wheeler in our patent application filed November 20, 1946, Ser. No. 711,204, containing the aluminum 1.0 to 9.0 per cent, chromium 13 to 23 per cent, cobalt exceeding 10 but not exceeding 35 per cent, titanium 0.01 to 5.0 per cent, remainder and at least 30 per cent nickel * * *."

Thus, it is seen that the 2,497,667 patent does not specifically disclose Alloy B or any alloy containing molybdenum, but that a reference is made to the 711,204 application. Plaintiff does not dispute the fact that the Patent Office has made a special effort to preserve the abandoned 711,204 application, and that it is now available for public inspection under Rule 14(b) of the Patent Office's Rules of Practice in Patent Cases. However, plaintiff does contend that the reference was made for a limited purpose and that the disclosure in the 711,204 application has not been incorporated into the 2,-497,667 patent by reason of the reference, and, therefore, the 711,204 application is not available as a prior art reference until issue date of the 2,497,667 patent. We cannot agree with this contention which would unduly limit the scope of 35 U.S.C. § 102(e).

Normally, abandoned applications are not open to public inspection, except that if an application referred to in a United States patent is abandoned it may be inspected by any person. See Rule 14(b) of the Patent Office's Rules of Practice in Patent Cases. Thus, the availability of the abandoned 711,204 application is conditioned upon, and simultaneous with, the issuance of the 2,497,-667 patent. In these circumstances, we believe that the full disclosure of the 711,204 application is as much a part of the disclosure of the 2,497,667 patent as if fully set out therein.[4] See Application of Heritage, 182 F.2d 639, 643, 37 CCPA 1109 (1950); Technograph Printed Circuits, Ltd. v. Bendix Aviation Corp., 218 F.Supp. 1, 31 (D.Md.1963),

---

4. The application which matured into the 2,497,667 patent was filed on February 4, 1947 and that patent was issued on February 14, 1950; the 711,204 application was abandoned on February 9, 1950. We are not unaware of the possibility that, had the 2,497,667 patent been issued much earlier, there might have been a period during which the 2,497,667 patent was issued but the 711,204 application was still pending. Under those circumstances there might have been some uncertainty as to the availability of the 711,204 application, during its pendency, for public inspection. Compare Rule 14 (a) with Rule 14(b) of the Rules of Practice in Patent Cases. However, that is not the situation we have in this case.

aff'd 327 F.2d 497 (4th Cir. 1964). Plaintiff says that, in the cases just cited, the courts therein did not rely upon the referenced abandoned application for any date earlier than the issue-date of the referencing patent. However, that argument misses the point of citing those cases. The cited cases involved 35 U.S.C. § 102(b), and they stand for the proposition that the contents of an abandoned application are "described in" the referencing patent by virtue of a cross-reference. The same two words appear in 35 U.S.C. § 102(e). We are shown no reason why they should be given a different meaning in different parts of the same section of the statute. We hold, therefore, that the disclosure of the 711,204 application was "described in" the 2,497,667 patent.

Finally, we believe that plaintiff has a valid objection to the Government's motion in that, in order for 35 U.S.C. § 102(e) to be a bar to plaintiff's patent, the Government must show that the application for the 2,497,667 patent was filed before the invention in the 2,712,498 patent was made. The Government contends that this requirement is met by the facts in this case since the application for the 2,497,667 patent was filed on February 4, 1947, which was before the priority date of June 1, 1948 claimed for the application for the 2,712,498 patent. This contention assumes that plaintiff's invention date for the 2,712,498 patent coincides with its filing date in Great Britain. Plaintiff denies this assumption,[5] and presents affidavits from Gresham and Wheeler, two of the applicants for the 2,712,498 patent, tending to show an invention date before January, 1947. Thus, there exists a genuine issue as to a material fact which, for the purposes of this motion, must be resolved in favor of the plaintiff, against whom the motion is directed. Assets Service Corp. v. United States, 121 Ct.Cl. 308, 312 (1952); Doehler Metal Furniture Co., Inc. v. United States, 149 F.2d 130, 135 (2d Cir. 1945). The claim asserted by Gresham, Dunlop and Wheeler in their 2,712,498 application to a priority date corresponding to the filing date of their application for a British patent does not limit them to that date as their date of invention. Section 102(e) states " * * * before the *invention* thereof by the applicant for patent." Applicants for the patent here in suit must be allowed an opportunity to prove their *invention* date which they have asserted by affidavits to be prior to the claimed *priority* date.

For the reason stated above, the Government and the intervenor have not made out a case for which summary judgment can be granted. Their motions must, therefore, be denied. The case is remanded to a trial commissioner for further proceedings on the merits.

DAVIS, Judge (concurring in part and dissenting in part):

I join those parts of the court's opinion which reject the intervenor's two separate contentions. I also concur with the court that Section 102(e) is inapplicable if the plaintiff's "invention" was made before the application for the 2,497,667 patent (February 4, 1947), and that there is a substantial issue of fact as to when the invention was actually made. For these reasons, and those about to be stated, I agree that both the Government's and the intervenor's motions for summary judgment, should be denied and the case returned to the Trial Commissioner for further proceedings.

---

5. Plaintiff's denial was not explicitly stated in its reply brief to the Government's motion, but it was pointed out in plaintiff's reply brief to the intervenor's motion. In the Government's reply to plaintiff's objections to the motion, it is suggested that since plaintiff did not pointedly raise the issue of invention date, that issue has been conceded by the plaintiff. However, the Government did not press this point during oral argument and we believe it to be untenable. Under our Rule 13(b), all pleadings shall be so construed as to do substantial justice. We take plaintiff's denial of the applicability of 35 U.S.C. § 102(e) to be a general one. Furthermore, the Government cannot be said to be surprised by the presence of this issue in the case since it had notice from plaintiff's reply brief to the intervenor's motion.

My dissent is from the holding that the plaintiff's invention "was described", within the meaning of Section 102(e), in the application for the 2,497,667 patent. I would not decide that difficult question at this stage, but would await the potential help of a fuller inquiry into the surrounding facts. My main uncertainties, at the present time, are these:

(a) The reference in the 2,497,667 patent was to "An alloy as proposed by the applicants and Marcus Alan Wheeler in our patent application filed November 20, 1946, Ser. No. 711,204"—without mention of molybdenum (which was only an optional metal) or of the "balance factor."[1] Plaintiff claims that this reference was partial and made for special purposes—to inform the public of an alloy on which the process invention could be used, and to comply with a Patent Office requirement—and that these limited goals prevented the reference from fully incorporating, and therefore "describing" (under Section 102(e)), the plaintiff's invention (later patented in No. 2,712,498) which rests so largely on the "balance factor" and the presence of molybdenum in specified quantities. I am uncertain whether the purpose and scope of a reference have any bearing on its use to void the patent under Section 102(e). The court's brief discussion does not satisfy me.

(b) In any event, I am gravely in doubt whether the "reference" doctrine[2] should be used, under Section 102(e), to invalidate an entire patent, like 2,712,-498, simply because one alloy within the range claimed in the new invention happened by chance to have been made and described previously by inventors who were unaware of the cardinal factors (the "balance factor" and the use of molybdenum) which are said to give novelty to, and be the essence of, the new invention. Section 102(e) restates the rule of Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651 (1926), and that decision related to an earlier application which "gave a complete and adequate description of the thing patented to Whitford [the patentee], but it did not claim it" (270 U.S. at 399, 46 S.Ct. at 324). Is that true here? Is an invention "completely and adequately described" by an earlier writing which omits almost everything which is said to be novel in that invention? That is exactly plaintiff's contention—supported by affidavits.

Since the case is to be remanded to the Commissioner, it is unnecessary to dispose of this "reference" issue, under Section 102(e), at this point of the litigation. I would leave the question open and allow plaintiff, among other things, to prove the date of its invention (as embodied in the patent in suit), whether the date be before or after February 4, 1947 (the time of the application for the 2,-497,667 patent).

LARAMORE, Judge, joins in the foregoing opinion concurring in part and dissenting in part.

1. The full text of the reference was as follows:

"An alloy as proposed by the applicants and Marcus Alan Wheeler in our patent application filed November 20, 1946. Ser. No. 711,204, containing aluminum 1.0 to 9.0 per cent, chromium 13 to 23 per cent, cobalt exceeding 10 but not exceeding 35 per cent, titanium 0.01 to 5.0 per cent, remainder and at least 30 per cent nickel under a stress of 15 tons at 800° C. gave a creep life to fracture of 50 hours after the heat treatment proposed in the provisional specification namely soaking 1020–1100° C. for from 8 to 30 hours, quenching and ageing at 650° to 850° C. from 8 to 30 hours. When given first preliminary heat treatment according to this invention followed by the said proposed heat treatment it gave under the same test conditions a life of 72 hours."

2. When applied together with the doctrine that a generic claim is invalidated by an earlier specific composition falling within the range later claimed generically. See, e. g., Chesterfield v. United States, 159 F.Supp. 371, 141 Ct.Cl. 838, 842 (1958); Helene Curtis Industries, Inc. v. Sales Affiliates, Inc., 233 F.2d 148, 159 (C.A.2, 1956), cert. denied, 352 U.S. 879, 77 S.Ct. 101, 1 L.Ed.2d 80 (1956).